## STATE OF MINNESOTA vs. ANNIE OLESON.

### June 9, 1880.

26 507<br>42 150<br>26 507<br>60 124

**St. Paul—Jurisdiction over Offences not Exclusive.**—*State* v. *Charles*, 16 Minn. 474, followed and approved, as to the points that the charter of the city of St. Paul has not transferred and vested in the city exclusive jurisdiction over the offence of keeping a house of ill-fame, resorted to for the purpose of prostitution, and that the general law found in Gen. St. 1878, c. 100, § 9, is not superseded by the city ordinance upon the same subject.

**Same—Conviction under Ordinance not a Bar to Indictment for Keeping House of Ill-fame.**—Upon the questions raised on defendant's second special plea in the case, the members of the court are unable to agree, the Chief Justice holding that the city ordinance involved is valid, and that a conviction under it is a valid conviction, and a bar to a subsequent indictment for the same act; Mr. Justice Berry holding that the ordinance is invalid, and therefore that a conviction under it is not a bar to such subsequent indictment; and Mr. Justice Cornell holding the ordinance to be valid, but that a conviction under it is no bar to such subsequent indictment.

The decision of the court below on the demurrer to the first special plea, *held* correct, and its decision on the demurrer to the second special plea, *held* erroneous.

The defendant, being arraigned in the district court for Ramsey county, *Wilkin*, J., presiding, upon an indictment for keeping a house of ill-fame in the city of St. Paul, in that county, pleaded (1) Not guilty; (2) an ordinance of the city of St. Paul, which, it was contended, superseded Gen. St. c. 100, § 9, within the limits of the city; and (3) a prior conviction and sentence in the municipal court of St. Paul, on a prosecution under the ordinance, for the identical act and offence charged in the indictment. The prosecuting attorney demurred to each of the second and third pleas. The demurrer to the second plea was sustained, and that to the third plea was overruled, and thereupon the presiding judge reported the case to this court, pursuant to Gen. St. 1878, c. 117, § 11.

Geo. P. Wilson, Attorney General, and E. G. Rogers, for the State.

Henry F. Masterson, for defendant.

BERRY, J.   The defendant was indicted for the crime of keeping, in the city of St. Paul, a house of ill-fame, resorted to for the purpose of prostitution.

The second plea was: "That, under and pursuant to the act of the legislature, entitled 'An act to reduce the law incorporating the city of St. Paul, in the county of Ramsey, and state of Minnesota, and the several acts amendatory thereof, into one act, and to amend the same,' approved March 6, 1868, and under and pursuant and in accordance with the authority in and by said act granted to and vested in the common council of the said city of St. Paul, the said common council of the said city of St. Paul did, on the 7th day of. October, 1869, duly pass, adopt and publish a certain ordinance to suppress houses of ill-fame in said city, and to provide for the arrest and punishment of the keepers thereof, and did, in and by said ordinance, provide for the arrest and trial before, and conviction and sentence by, the city justice of the said city of St. Paul; and which said ordinance provides for and regulates the proceedings for the arrest, trial, conviction and punishment of all persons who shall keep houses of ill-fame, or places resorted to for the purpose of prostitution, within the limits of said city, thereby providing for the punishment of the specific offences and specific acts charged in this indictment; that the aforesaid act was amended by an act entitled 'An act to amend an act, entitled An act to reduce the law incorporating the city of St. Paul, in the county of Ramsey and the state of Minnesota, and the several acts amendatory thereof, into one act, and to amend the same,' approved March 8, 1875, by which said act there was established in said city a court of record, called the municipal court, to which said court therein was granted all the powers and authority theretofore given in said city to the city justice." To this plea the state demurred, and the demurrer was sustained.

The defendant's contention, as respects this plea, is that the ordinance referred to "has all and the same force, operation and effect that it would have had if it had been enacted directly by the legislature as a special act; that is to say, it takes the place (in the city of St. Paul) of the general statutes on the same subject, the same as if the legislature itself had passed a special act in the words of the ordinance." The same point was made in *State* v. *Charles*, 16 Minn. 474, and was decided to be untenable. Notwithstanding the able argument of counsel to the contrary, we are of the opinion that the decision was correct, and that the demurrer to the second plea was properly sustained.

The defendant's third plea was "that she has already been duly convicted and punished, under the charter and ordinances of the said city of St. Paul, of and for the said offence of keeping a house of ill-fame, resorted to for the purpose of prostitution, committed at said city of St. Paul, and in said county of Ramsey, on the first day of January, A. D. 1879, and on divers other days and times between that day and the day of the date of this indictment, and has paid the penalty and suffered the punishment therefor, in accordance with the provisions of the charter and ordinances of said city, referred to in her second plea, which said conviction is the same offence and same specific acts of offence, as regards all matters and things in the said indictment charged; which said conviction and punishment was had by the judgment of the municipal court of the said city of St. Paul, rendered at the said city of St. Paul, on the 19th day of April, 1879." The state's demurrer to this plea was overruled.

The offence for which the defendant was convicted under the city ordinance is, according to the averments of the plea, (the truth of which the demurrer admits,) the same offence for which she is indicted. If she has been once duly convicted and punished for it, she should not be convicted and punished for it a second time, for this would violate the familiar provision of our constitution, "that no person for

the same offence shall be put twice in jeopardy of punishment." It is no answer to this proposition to say that one conviction is had, and one punishment administered, through a municipal court, and for a violation of a city ordinance, and that the second conviction and punishment are sought to be had through a district court, and for a violation of a general law of the state. These considerations in no way affect the fact that the second alleged offence is identical with the first. The consequence is that, if the former conviction is valid, the district court was right in holding the defendant's third plea to be a good answer to the indictment, and in therefore overruling the state's demurrer.

But was it valid? It certainly was not if the ordinance was not valid as respects the offence in question. The ordinance reads as follows: "Any person or persons who shall, within the limits of the city of St. Paul, keep a house of ill-fame, or a place resorted to for the purpose of prostitution, * * * shall, on conviction thereof before the city justice, be punished by a fine not less than five, nor more than one hundred dollars, and imprisonment not exceeding thirty days, or either, at the discretion of the said justice."

The statute under which the defendant was indicted is as follows: "Whoever keeps a house of ill-fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the state prison not more than one year, nor less than six months; or by fine not exceeding three hundred dollars, nor less than one hundred dollars." Gen. St. 1878, c. 100, § 9.

It appears, then, that the crime of keeping a house of ill-fame, resorted to for the purpose of prostitution, is, under the statute, a felony punishable by imprisonment in the state prison from six months to a year, or by fine from $100 to $300. Under the ordinance, the same crime is a misdemeanor, punishable by a fine from $5 to $100, and by imprisonment in the city prison not more than thirty days, or by either. As respects, then, the punishment of the offence

in question, the ordinance is clearly repugnant to the statute. So that, if the ordinance were upheld, it would follow, from the conclusions before reached, that a person guilty of such offence might, through a conviction under the ordinance, satisfy the demands of justice by a much lighter punishment than that which the general law has deemed it necessary to prescribe for offences of that character.

But, on account of its repugnancy to the statute, the ordinance, so far as respects the offence mentioned, is invalid and cannot be sustained. For the city charter, by virtue of which alone the ordinance was enacted, expressly declares that the power to enact ordinances is subject to the proviso, "that they be not repugnant to the constitution and laws of the United States, or of this state." Sp. Laws 1868, p. 69. As the conviction set up in bar of the indictment was under an ordinance invalid and void as respects the offence charged in the indictment, it was a conviction without any authority of law whatever—a conviction for an offence which was not an offence; or, in other words, it was not a conviction at all, and hence the defendant was not, in contemplation of law, put in jeopardy of punishment for the offence for which she is indicted, either by the so-called conviction under the ordinance, or by the prosecution which led to it. It follows that, in my opinion, the district court was wrong in overruling the demurrer to the third plea.

It is true, still, that the charter of St. Paul authorizes the common council, "by ordinances, resolutions or by-laws, * * to suppress * * * houses of ill-fame, and to provide for the arrest and punishment of the keepers thereof." Sp. Laws 1868, p. 70. But the ordinances thus authorized must not violate the proviso against repugnancy. They cannot cover the same precise ground as the general law upon the same subject, because it is not competent, under the city charter, for the common council to impose the punishment prescribed by the general law, the authority of the common council in that regard being limited to the imposition of a fine not exceeding

$100, and imprisonment in the county jail for a time not exceeding 30 days. The city ordinances for the arrest and punishment of keepers of houses of ill-fame must, therefore, be directed to something else than the simple keeping of houses of ill-fame, resorted to for the purpose of prostitution; as, for instance, to something relating to the manner of keeping them, or, perhaps, to the place in which they are kept.

CORNELL, J. I fully concur in the opinion of my associate brother Berry, that the precise question raised by the demurrer to the second plea of the defendant in this action was presented to this court, and authoritatively and correctly decided, in *State* v. *Charles*, 16 Minn. 474; and that, in following the adjudication in that case, the demurrer to this plea must be sustained.

The question raised by the demurrer to the defendant's third plea is whether the latter is good as a plea of a former conviction for the same offence as that charged in the indictment herein. The plea is as follows: "That she (the defendant) has already been duly convicted and punished, under the charter and ordinances of the said city of St. Paul, of and for the said offence of keeping a house of ill-fame, resorted to for the purpose of prostitution, committed at said city of St. Paul, and in said county of Ramsey, on the first day of January, A. D. 1879, and on divers other days and times between that day and the day of the date of this indictment, and has paid the penalty and suffered the punishment therefor, in accordance with the provisions of the charter and ordinances of said city, referred to in her second plea, which said conviction is the same offence and same specific acts of offence as regards all matters and things in the said indictment charged; which said conviction and punishment was had by the judgment of the municipal court of the said city of St. Paul, rendered at the said city of St. Paul, on the 19th day of April, 1879."

In construing this plea, regard should be had to the familiar

rule that nothing contained in a pleading is to be taken as admitted by a demurrer, except such facts as are material and well pleaded. The averment of due conviction is but a legal conclusion drawn by the pleader from the facts stated, and is not admitted.

The former conviction which is pleaded, is stated to have been under the charter and ordinances of the city of St. Paul, and by the municipal court of that city. Unless it was within the jurisdiction of that court, and the provisions of some ordinance authorized by the charter, of course it was null and void. Outside the allegations of the plea, the court can take no judicial notice of the particular terms and provisions of the ordinances therein referred to. *City of Winona* v. *Burke*, 23 Minn. 254. But, whatever their character, it is clear they can have no legal validity except as authorized by the charter of the city, in pursuance of which they were adopted.

The charter of the city of St. Paul does not attempt to confer upon its common council any authority to pass ordinances in respect to any offences, amounting to felonies, which may be committed against the state, in violation of its laws, nor for the trial, conviction and punishment of persons guilty of such offences. The power which it gives, by express and specific grant, "to enact ordinances" for the purposes therein named, all of which are municipal, "to suppress houses of ill-fame" within the city, and to provide for the arrest and punishment of the keepers thereof, by a fine not exceeding $100, and imprisonment in the city or county jail not exceeding 30 days, (Sp. Laws 1868, p. 70, subd. 3; p. 75, subd. 35,) confers no authority to provide for the punishment of any offence committed against the state by the keeping of any such house in violation of its laws; and any ordinance enacted with that view, and of that character, would be a nullity, and a conviction thereunder void. And yet this must have been the character of the ordinance under which the alleged former conviction was had, if it is conceded that it was for the same offence charged in the indictment, for

that clearly charges an offence committed "against the peace and dignity of the state, and contrary to the form of the statute," and not in violation of any ordinance.

Furthermore, as the offence alleged in the indictment is a felony under the laws of the state, (Gen. St. 1878, *c*. 91, § 2; *c*. 100, § 9,) a former conviction for the same offence, by the municipal court of the city of St. Paul, would be of no effect whatever, and could not subject the defendant to any penalty or punishment, inasmuch as that court was wholly without jurisdiction to pronounce any judgment concerning an offence of that character. It was only triable upon indictment properly found by a grand jury, and by a court of competent jurisdiction to try indictments. The municipal court is invested with no such jurisdiction. The plea is, therefore, clearly bad so far as it attempts to set up a former conviction and punishment for the same offence. It is suggested, however, that the plea may be sustained, for the reason that it sufficiently alleges that the former conviction and punishment, under the ordinance, was for the same specific act of offence charged in the indictment; and this, perhaps, raises the question both as to the validity of the ordinance, and the effect of a conviction thereunder as a bar to any prosecution by indictment founded upon the same act.

The statute upon this subject, and upon which the indictment is based, enacts that "whoever keeps a house of ill-fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the state prison not more than one year nor less than six months, or by fine not exceeding three hundred dollars nor less than one hundred dollars." Assuming that the ordinance under which the alleged former conviction was had, in terms prohibited the keeping of any such house within the city, under a penalty for its violation not in excess of that prescribed by the charter, it was not in my opinion unauthorized or invalid. Keeping a house of this character, which the statute denounces as a felony, without reference to the place of its location, was an offence

at common law, because of its evil influence and effect upon the public morals. Keeping it in a crowded and populous city, where its pernicious influence is ever present and constantly felt, is a circumstance greatly in aggravation of the evil as respects that community. A breeding-place of vice and crime, it is a continual menace to the orderly government of the city, creating, in the affrays and mischiefs it causes, a necessity for increased taxation for the preservation of its peace and quiet. These are special evils, that directly and specially affect the city as a municipal government, which are not provided for by the statute, as they do not affect the state at large, or at most only remotely, and in a much less degree. Their suppression is essential to the welfare of the municipality, and to enable it to accomplish the purposes of its creation; and any ordinance directed to these ends, and not to the punishment of the offence against the state, would be an exercise of corporate authority for a strictly municipal purpose. The competency of the state, through its legislature, to confer such authority, without at the same time surrendering any of its jurisdiction over the offence against it, I cannot doubt. It would come within the principle of the rule announced by Mr. Dillon, in his work on municipal corporations, that "where the act is, in its nature, one which constitutes two offences, one against the state, and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offence under the state law; but the legislative intention," says this learned author, "that this may be done, should be manifest and unmistakable, or the power in the corporation should be held not to exist." Dillon, Mun. Corp. § 302. I fully agree with this learned author as to the correctness of this rule, which, it seems to me, governs this case in respect to the point under consideration.

The legislative intention in this case has been expressed too clearly to admit of any doubt. The charter gives, in express terms, the authority, by ordinance, "to suppress houses

of ill-fame" within the city, and "to provide for the arrest and punishment of the keepers thereof," by "a fine not exceeding one hundred dollars, and imprisonment in the city prison or county jail not exceeding thirty days, or both, and to be fed on bread and water, in the discretion of the city justice." Sp. Laws 1868, p. 70, subd. 3; p. 75, subd. 35. It is given as a specific grant of power, after a general authority, already conferred, to enact all ordinances deemed expedient, and not repugnant to the constitution and laws of the United States and of the state, for certain purposes therein named, of a municipal character solely and exclusively; and it is expressly declared that such specific power is given for the like general purposes, thus excluding any inference that it can be used for the prosecution and punishment of offences against the state, or for any other than strictly municipal purposes. According to a familiar rule, a grant of authority thus specifically enumerated must be taken as within the intention of the legislature, and as not embraced by the proviso as to repugnancy. On the contrary, it is a plain declaration by the legislature that its exercise by the corporate authorities, for municipal purposes alone, was contemplated and intended, and that such its exercise would not be in conflict with the statute then in force, making the act of keeping a house of ill-fame a felony, and providing for its punishment as such, under the laws of the state. That this was the legislative intention is further, evidenced by the fact that, in 1878, express authority was given to the common council of said city to appropriate and set apart, in whole or in part, all fines collected in the exercise of the power from the keepers of houses of ill-fame in said city, for the use and support of institutions established therein for the care and reformation of fallen women. Sp. Laws 1878, c. 143.

As to the question of repugnancy between the statute and the supposed ordinance, the former looks to the maintenance of the "peace and dignity of the state," by the punishment of an unlawful act, offensive to public morality, and criminal wherever committed, without reference to the particular inter-

ests of any locality; the latter, to the preservation of the morals of a particular community, and to its protection against the local evils and mischiefs resulting to it from the commission of such wrongful act in its midst; to which ends alone both the prohibition and the punishment provided by the ordinance are directed, without any reference to the criminal character of the act as a public offence. They are not inconsistent with each other, and, within the principle of *State* v. *Ludwig,* 21 Minn. 202, there is no repugnancy between them, as would clearly have been the case if the ordinance had merely attempted to regulate what the statute absolutely prohibits.

The remaining question respects the liability of defendant to punishment, both under the ordinance and the statute, both being in force, and it being conceded that the act which constitutes the offence, or out of which it arose, is the same in each case. It is objected that a conviction and punishment under both would work the infliction of a double punishment for the same act, and that this is prohibited by the constitutional guaranty that "no person for the same offence shall be put twice in jeopardy of punishment." Const. art. 1, § 7. The term "offence," in criminal law, is not identical in meaning with the word "act." It imports, in its legal sense, an infraction or transgression of a law—the wilful doing of an act which is forbidden by a law, or omitting to do what it commands. 1 Wharton Cr. Law, § 1; 2 Bouvier Law Dict. 254; *Moore* v. *State of Illinois,* 14 How. 13.

The identity of an offence, therefore, is to be determined by a reference both to the act done, and the law which it violates; and if the act itself is a transgression of the two distinct laws, it results in two offences. The case above cited, (*Moore* v. *State of Illinois,*) and that of *Fox* v. *State of Ohio,* 5 How. 410, 435, furnish illustrations of the truth of this proposition, and establish the doctrine that a single act done by a party owing allegiance both to the government of the United States and the government of a state, in violation of the laws of both, constitutes two distinct offences, and subjects him to

the liability of a conviction and punishment under both. This doctrine is fully approved by that court in *United States* v. *Marigold,* 9 How. 560, 569; *United States* v. *Cruikshank,* 92 U. S. 542, 550; and in the recent case of *Ex parte Siebold,* 100 U. S. 371.

The principle of these decisions, says Mr. Cooley, applies to the violation, by one and the same act, of a state law and a valid municipal ordinance. That principle is this: that every government competent to the enactment of a law with a penalty for its infraction, which shall be obligatory upon those subject to its jurisdiction, may punish any violation thereof, though the offender may also have been subjected to punishment, under another jurisdiction, for an infraction of its laws by the same act. Within the limits of its authority to enact ordinances with the force of law, for the government of its citizens, a municipal corporation is a government, and, if the statute creating it so permits, it may, through its own separate tribunals, exercise the powers of a government in respect to all offences committed against it.

Mr. Cooley, in speaking upon this subject, says: "The same act may constitute an offence against both the state and the municipal corporation, and may be punished under both, without the violation of any constitutional principle." And this doctrine, he also says, is sustained by the clear weight of authority. Cooley's Const. Lim. 199, and note 4.

Mr. Bishop expressess concurrence with these views in these words: "The true doctrine appears to stand thus: If the statute so authorizes, it is not apparent why a city corporation may not impose a special penalty for an act done against it, while the state imposes also a penalty for the same act done against the state." And he regards the doctrine as analagous to that which obtains in respect to an act done in violation of the laws both of the United States and of a state, which, he says, "may now be deemed settled." Bishop on Stat. Crimes, § 23.

If these views are correct, as they are believed to be, the

constitutional guaranty invoked by the defendant has no application to the facts of this case. Her conviction and punishment, under the ordinance, was for an offence against the city which it was legally authorized to punish. She now stands indicted for an offence committed against the state, by a violation of its laws. The two are separate and distinct offences, and, if guilty, she is liable to punishment for both.

In my opinion, the demurrer to the third plea ought to have been sustained, and the order of the court below overruling it should be reversed.

GILFILLAN, C. J. I concur in the opinion of my associates that the second plea was correctly overruled. I also concur in the opinion of Mr. Justice Berry, that if the conviction under the city ordinance was a valid conviction, it is a bar to the indictment. A person is to be punished because he wilfully does an act which the law prohibits, or omits doing an act which it commands. The doing of the prohibited act, or omitting the act enjoined, constitutes the legal offence. The fact that there may be several statutory prohibitions of an act, or that several prohibiting statutes may designate the offence by different names, does not multiply the act so as to make the doing of it several distinct offences.

The United States and the state is each an independent political jurisdiction, and, from necessity, each must have power to protect itself, and to define and punish offences against its jurisdiction and sovereignty, without regard to what may be done by the other. The constitutional inhibition to punish twice for the same offence was not intended to reach those cases where, in the proper exercise of their powers, the United States and a state have each declared an act to be an offence against it. And the cases in which it has been held that where the same act is an offence against a law of the United States, and also of a state, a conviction under one is no bar to an indictment under the other, do not apply in principle to cases

where it is proposed to punish an act several times, because several times prohibited by or under authority of the same political jurisdiction, which is this case.

As to the validity of the ordinance, I have no doubt.   Section 3, chapter 4, of the city charter provides: "The common council shall have full power and authority to declare and impose penalties and punishments, and to enforce the same against any person or persons who may violate any of the provisions of any ordinance, rule or by-law passed or ordained by them; and all such ordinances and by-laws are hereby declared to be and to have the force of law: *provided,* that they be not repugnant to the constitution and laws of the United States, or of this state; and for these purposes shall have authority, by ordinances, resolutions or by-laws, \* \* \* to suppress disorderly houses or groceries, and houses of ill-fame, and to provide for the arrest and punishment of the keepers thereof."   Sp. Laws 1868, pp. 69, 70. "Fines, penalties and punishments imposed by the common council for the breach of any ordinance, by-law or regulation of said city, may extend to a fine not exceeding one hundred dollars, and imprisonment in the city prison or county jail not exceeding thirty days, or both, and to be fed on bread and water, at the discretion of the city justice."   Id. p. 75.

Here is an express and specific grant of power to punish keepers of houses of ill-fame, by fine not exceeding $100, and imprisonment not exceeding 30 days.   It is suggested that, as this offence is punishable as a felony under the general law of the state, an ordinance imposing a less punishment would be repugnant to the general law, and so, under the proviso in section 3, would be prohibited.   This construction would make a general clause prevail over and defeat special and particular provisions of the act.   The reverse is the proper rule of construction.   It must be presumed that, when the charter was passed, the legislature knew what punishment the general law provided for this offence; and to suppose that, when it empowered the council to punish it,

only in a less degree, it intended that a difference in the punishments imposed by the general law and the ordinance should render the latter inoperative, is to impute to it an absurdity.  The more reasonable interpretation is, either that the clause as to repugnancy was not intended to apply to the powers specifically and in detail conferred on the council, or that a mere difference between the punishments under the general law and the ordinance was not a case of repugnancy, within the meaning of the proviso.

I am of opinion that the demurrer to the third plea was rightly overruled.

NOTE. The case of *State* v. *Pauline Bell* was argued and submitted by the same counsel and at the same time as the foregoing case, and was disposed of in the same way.