## SUSAN C. BAILEY v. E. E. BAILEY, Appellant.

**Slander:** REPETITION. Repetitions of a slander declared on by the use of words of like import are admissible to show malice, though the words declared on are actionable *per se.*

SAME. "Wench," "hussy," and "bitch" are of like import within this rule.

SAME. If not admissible as repetition, the uttering of these words before plaintiff's husband was proper to be considered on the issue of alienation of the husband's affections.

**Alienation of Affections:** PRACTICE. In an action by a wife against her father-in-law for alienating the affections of her husband, the plaintiff testified that defendant induced the husband to break his promise to move with her to a place of his own. Defendant promised to show that he offered the husband a place on which to live with plaintiff, and that the husband refused, stating that he would not live with plaintiff anywhere. *Plaintiff was not present when this occurred. Held,* it was error to exclude this, as it was substantive evidence that defendant was trying to induce the parties to live together, of what the husband's state of mind was and that other causes than defendant's acts were to blame for the alienation.

SAME. Testimony that the wife used and taught her child to use vulgar language, is admissible to show her character, and upon the domestic happiness of the couple.

RANK OF DEFENDANT. The rank, wealth and condition of defendant is not admissible on assessing damages.

CROSS-EXAMINATION. The fact that the wife became a witness in an action for the alienation of her husband's affections does not permit it to be shown by her cross-examination that her husband married her, after seducing her, to avoid prosecution, and that he had no affection for her.

MOTION TO STRIKE. Where a proper question elicits proper matter mingled with improper, the admission of the whole answer is not reversable in the absence of a motion to strike.

INSTRUCTIONS CRITICISED.

*Appeal from Cherokee District Court.*—HON. A. VAN
WAGENEN, Judge.

MONDAY, MAY 20, 1895.

Action at law to recover for work and labor, for
slanderous utterances used by defendant of and con-
cerning the plaintiff, and for alienating the affections
of her husband. Trial to a jury. Verdict and judg-
ment for plaintiff for the alleged slander and alienation
of her husband's affections. Defendant appeals.—
*Reversed.*

*G. T. Foster* and *E. C. Herrick* for appellant.

*A. C. Hobart* and *J. A. Metcalfe* for appellee.

Deemer, J.—Plaintiff herein brought suit against
the defendant, who is her father-in-law, upon six causes
of action, one of which was for work and labor per-
formed, and the other five for slander. Afterward she
amended her petition by adding another count for alien-
ating her husband's affections. The defense was a gen-
eral denial, and a plea of the statute of limitations to
the count for alienation of affections. The case was
tried to a jury, resulting in a verdict for plaintiff for
two thousand dollars,—eight hundred dollars for slan-
der, and one thousand two hundred dollars for alienat-
ing her husband's affections. The appeal is from the
judgment rendered on the verdict; and errors are
assigned on the admission and rejection of testimony,
and on the instructions given and refused by the court.

The words charged as having been uttered of and
concerning the plaintiff were that she was a "whore"
and a "prostitute;" "that she had had a child by her
own brother;" was a "street walker," and was

"unchaste;" that she was a "strumpet" and "a woman
of bad character," and that he (defendant) would
prove it. The plaintiff was permitted to prove,
over defendant's objections, that at other times
and to different persons than those stated in the peti-
tion defendant said of and concerning plaintiff that her
first child was by her brother Andy, and that he could
prove it; that plaintiff was nothing but "a damned old
bastard" anyway; and that he said to plaintiff's hus-
band, "You had better look out, or there will be another
Jenkins around;" that plaintiff's husband should not
live with such a damned "bitch" as she was; that she
was a "bitch;" that she was a "strumpet;" and he said
to a brother of plaintiff that "he wanted to get his sister
[meaning plaintiff] up there to harbor her again, and
have another bastard young one by him, like she di'
have." It is insisted that the court erred in admittin;
this testimony "because—*First*, evidence of othe
slanders, not the same as those counted on, either in
words or in substance, is incompetent and immaterial;
and, *second*, because it is not competent to pile up proof
of malice in this way where the words counted on them-
selves prove malice, unless there is some evidence of
privilege, and of which there is no claim by the appel-
lant." The testimony was received by the court simply
as tending to show malice; and in the instruction given
to the jury he carefully limited the operation of the tes-
timony to the question of actual malice. It has been
held time and again by this court that, for the purpose
of showing malice, repetitions of the slander, both
before and after the speaking of the words complained
of, may be proved. *Beardsley v. Bridgman,* 17 Iowa,
290; *Schrimper v. Heilman,* 24 Iowa, 505; *Prime v.
Eastwood,* 45 Iowa, 640; *Hinkle v. Davenport,* 38 Iowa,
355; *Halley v. Gregg,* 74 Iowa, 563; *Jean v. Hennessy,*
69 Iowa, 373; *Hanners v. McClelland,* 74 Iowa, 318.

See, also, *Gribble v. Pioneer Press Co.*, 25 N. W. (Minn.) 710; Townshend, Slander & Libel, sections 392-396. The better opinion seems to be that the repetitions must be of the same words as those counted on or of words of like import. See authorities last above cited. Repetitions of the slander or of words of similar import are admissible, although the words charged as having been uttered are actionable *per se.* There is apparently an incongruity in the rule, but it is supported by the overwhelming weight of authority. See *Hinkle v. Davenport, supra,* and authorities therein cited.

The only question we have, then, with reference to the testimony admitted by the court, is whether the words used were of like import as those charged in the petition. We think they were all similar, except it be the word "bastard," said to be used concerning the plaintiff. Turning to the record, however, we find that the witness who gave testimony with reference to the use of this word stated its use by defendant in answer to a proper question, and in connection with other statements which were clearly admissible, and no motion was made to strike it from the answer. Moreover, the language was used by defendant in the presence of his son, the plaintiff's husband, and it was admissible as bearing upon the question of alienating his affections. The word "bitch" is synonomous with "wench" or "hussy," and often implies lewdness. Standard Dict., page 200. We see no error in the admission of this testimony.

II. The plaintiff, when upon the witness stand, was asked upon cross-examination if she did not have her husband arrested before their marriage for the crime of seduction; if she did not ask him to marry her, and he refused to do so; if he did not tell her he had no

affection for her, and never did have; if she did not have him arrested, and compel him to marry her; and if her husband did not tell her when he married her that he would not live with her any longer than he was absolutely obliged to. Objections to these questions were sustained, on the ground that they were not proper cross-examination. It is conceded by counsel that nothing was said by the witness in her examination in chief which would justify this line of interrogation. But, to establish the alleged error of the lower court, it is contended that, as plaintiff came upon the witness stand claiming the benefit of a presumption that there was an affection existing between herself and her husband, she could be cross-examined with reference thereto. In support of this contention, reliance is placed upon the rule adopted in seduction cases, wherein it is allowable to cross-examine the prosecutrix with reference to particular acts of unchastity, although nothing had been said about her character in the examination in chief. See *State v. Sutherland*, 30 Iowa, 570. We do not see any parallel between the two cases.

The ultimate question in cases of this kind is, did the defendant alienate from plaintiff her husband's affections? The state of her mind and the ardor of her love are not material except upon the question of damages. The law indulges a presumption, no doubt, that the husband had affection for his wife, and it rests with the defense to prove that he did not have. But, by offering herself as a witness, she did not by that mere act affirm that he had affection for her. This presumption would arise whether she became a witness or not. We think the cross interrogatories propounded were objectionable, and that the court correctly sustained objections thereto. If it be conceded, however, that

the ruling was erroneous, it was error without preju-
dice, for the defendant was thereafter permitted to
show that the husband was arrested upon information
filed by plaintiff, accusing him of the crime, of seduc-
tion; that he married her to condone the offense; and
that he had no affection for plaintiff at the time of their
marriage.

III.    Counsel offered to show by defendant and his
wife that he (defendant) offered to give plaintiff's hus-
band eighty acres of land, upon which there was a small
mortgage, provided he would go and live upon it; that
he offered to give him a team, and to furnish him imple-
ments and all necessary seed with which to sow and
plant the land, and would take care of him the first year,
and would build a house upon the land, provided he
(plaintiff's husband) would go there and live with her;
and that plaintiff's husband then stated he would not
go and live there with her or anywhere else.  To
a better understanding of this offer, it is well to
state that plaintiff testified that, immediately
after her marriage to defendant's son, they went to live
with defendant; that she was anxious and pleaded with
her husband to go to Dakota, or to move on to some
place of their own; that her husband was willing and
promised to do so, but that he was induced not to do it
by the interference of the defendant; that defendant
persistently maligned and slandered her, and so
poisoned her husband's mind that he finally abandoned
her.    The court sustained objections to the proffered
testimony, on the ground that it called for self-serving
declarations made at a time when plaintiff was not
present.    He did admit testimony as to what was done
by defendant towards providing a home for plaintiff
and her husband, but held that offers of the use of a
farm made to the husband by defendant and the hus-
band's reply thereto, giving the reason why he would

not accept of them, were not admissible. In this we think he was in error. The fact that the statements were not made in the presence of plaintiff was wholly immaterial, for they were not offered as bearing upon her knowledge of defendant's treatment of his son. The purpose of the testimony was to show that defendant had, as a matter of fact, tried to induce his son to do the very thing plaintiff was insisting upon, and to show the condition of her husband's mind and the state of his affections toward her. Such testimony would have a tendency to negative the idea that defendant was trying to induce his son to abandon the plaintiff. It was substantive testimony of verbal acts tending to show that he was trying to induce his son to live with plaintiff, and that the son's refusal to do so was not brought about by his conduct. The expression of the son, made long before the commencement of the suit, that he would not live with the plaintiff on the land offered by defendant, or anywhere else, was certainly competent as bearing upon his feelings toward her. 2 Greenleaf, Ev., sections 55-57. The court permitted defendant to show what he did to induce his son to live with plaintiff. What he said to accomplish the same purpose was a part of the *res gestae*, and was, it seems to us, equally admissible. *Price v. Price*, 91 Iowa, 693.

Defendant offered to show that plaintiff frequently made use of profane and indecent language in the presence of his (defendant's) family, and in the presence of her husband, although not to him; and that she taught her little boy to use vulgar language, but was not permitted to do so. In view of the circumstances attending the marriage of plaintiff to defendant's son, it seems to us that such testimony was competent. If plaintiff was profane and vulgar, if she taught her children the use of indecent language, it

might have considerable to do in alienating her husband's affections. Such course of conduct is not calculated to win or hold the affections of a husband. The testimony offered also tends to show the state of domestic happiness in which they had previously lived, and also the character of the plaintiff. It is well settled that plaintiff's character in such an action is in issue. The testimony should have been admitted. As sustaining our conclusion, see Abbott, Trial Ev. pp. 685-687; *Smith v. Masten,* 15 Wend. 270; *Foot v. Tracy,* 1 Johns. 46; *Bennett v. Smith,* 21 Barb. 439; *Robinson v. Burton,* 5 Har. (Del.) 335; *Coleman v. White,* 43 Ind. 429.

Other errors are assigned on the admission and rejection of testimony. We have examined them all, and think the rulings were correct. Most of these rulings relate to questions asked on cross-examination. The trial court was vested with a wide discretion in these matters, and we do not think he abused it in this case.

IV. An instruction was asked by the defendant to the effect that the claim for alienation of affections was barred by the statute of limitations. This was refused, and defendant assigns error. The court submitted to the jury the question of fact as to when plaintiff's cause of action accrued, and directed them to find for defendant on this count if they found the action accrued more than two years prior to the time the amendment to the petition was filed adding this count. The instruction given by the court was correct, and there was evidence to sustain it.

V. The instructions given by the court are complained of. Language was used in some of them which was calculated to mislead the jury to defendant's prejudice. For example, in the first paragraph of the charge it is said: "In the plaintiff's petition there are

seven counts, but the court instructs you that there are but three sustained by the evidence, and they are as follows." Again, in paragraph 8½ occurs the following: "None of the counts in the plaintiff's petition, except those stated in these instructions, are sustained by the evidence, and you should allow nothing on any not set forth in paragraph 1 of these instructions." It may be that the jury did not understand the court to mean that these counts were sustained by the evidence, and we would not be inclined to reverse the case if this were the only error; but the words used were unfortunate, and we call attention to the matter simply to avoid a repetition of the instructions upon a retrial.

VI. In instructing upon the damages to be allowed for alienating her husband's affections, the jury was directed to take into consideration the rank and condition of the parties, and award damages commensurate with the injury, if any. This was error. The plaintiff cannot, as a general rule, prove her own poverty in aggravation of damages, nor can defendant show his straightened circumstances in mitigation. In cases of breach of promise and of slander the plaintiff may prove the defendant's wealth and social position in aggravation of damages; but this rule is exceptional, and has never been extended in this state to other cases than those mentioned. *Perrine v. Winter*, **73** Iowa, 645; *Guengerich v. Smith*, 34 Iowa, 348. It was no doubt competent for either party to show plaintiff's occupation, and perhaps the social position of herself and husband as bearing upon the value of her husband's consortium; but the wealth, rank, social position, or condition of defendant was wholly immaterial. *Kniffin v. McConnell*, 30 N. Y. 285. The instruction was erroneous for the further reason that there was no evidence showing the financial condition

of either of the parties, and none to show the defend-
ant's social rank or position.

For the errors above pointed out, the judgment is
*reversed.*