Town of Neola, Appellant v. S. W. Reichart.

**Breach of the peace.** Any riotous or forcible conduct or the utter-
1    ance of blasphemous language in a public place is a breach of
the peace.

**Cities and towns:** POLICE POWER: PUNISHMENT OF CRIME: ORDI-
2    NANCES. Where the statutes authorize a city or town to define
by ordinance an offense against the municipality and prescribe
a punishment therefor, the fact that the statutes also define
and provide for the punishment of the same offense does not
render an ordinance to that end void because inconsistent
therewith.

*Appeal from Pottawattamie District Court.*— Hon. W. R.
Green, Judge.

Wednesday, September 26, 1906.

The evidence indicated that the defendant and several others were in Steffen's saloon; that he and Foley were jollying each other, when the latter playfully threw his arms around defendant's neck and offered to kiss him, and accidentally knocked his hat off; that defendant remarked that he " was no d —— n fool," and, as Foley was about to apologize, called for drinks, and struck at Foley twice, missing him about four feet.    Thereupon Foley threw defendant to the floor and demanded that he admit that he had enough, whereupon the latter responded by calling him a son of a bitch.    The city marshal entered at this time, and, after parting them, filed an information against defendant in the mayor's court, where he was convicted.    Upon appealing to

the district court the information was amended so as to charge that defendant " did willfully and unlawfully disturb the peace of others, whose names are to affiant unknown, by the use of loud, violent, and tumultuous language, and by obstreperous conduct and carriage, and by profane, obscene, and offensive language calculated to provoke anger in other persons, and thereby caused a breach of the peace; and at the same time and place, and as a continuance of the same transaction, the said defendant did willfully and unlawfully commit an assault upon one J. P. Foley, and strike him in anger, and engage in a fight with him — all contrary to the ordinance in such cases made and provided."   At the conclusion of the evidence defendant moved that a verdict be directed for the defendant on the grounds (1) that the ordinance under which the prosecution was had covered the same offense included in the statutes of the State and was inconsistent therewith, and (2) that the evidence failed to show that the peace of any person was disturbed.   This motion was sustained, and a verdict directed for defendant, and judgment entered thereon.   The plaintiff appeals.— *Reversed.*

*John P. Organ* and *F. A. Williams,* for appellant.

No appearance for appellee.

LADD, J.— The evidence shows conclusively that the defendant, if guilty at all, was guilty of an assault, or of an assault and battery, or of engaging in a fight or an affray, or of making use of blasphemous language.

1. BREACH OF THE PEACE.   These were denounced by sections 11 and 12 of the ordinance of the incorporate town of Neola, and the same penalties provided as are fixed by statutes of the State defining the same offenses.   See Code, sections 4774, 5029, 5033, 5034.   The trial court must have held that the enactment of such an ordinance was an excess of the powers conferred on a city or incorporated town, as the transaction was

without doubt a disturbance of the peace. By " peace," as used in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right among all persons in a political society, and any intentional violation of that right " is a breach of the peace." See *Davis v. Burgess,* 54 Mich. 514 (20 N. W. 540, 52 Am. Rep. 828), where it was held that the use of indecent and profane language on a public street constituted a " breach of the peace." The court there said that " actual personal violence is not the essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear, and anticipated danger, and conduct of a guilty party, not only destructive of the peace of the city, but of the public morals, without the commission of the offense. The good sense and morality of the law forbids such a construction." In *State v. Benedict,* 11 Vt. 236 (34 Am. Dec. 688), public peace is defined as that " invisible sense of security which every man feels so necessary to his comfort and for which all governments are instituted." In *City of Cornvallis v. Carlile,* 10 Or. 139 (45 Am. Rep. 134), it is said that the word " peace," in its legal significance, means " quiet, orderly behavior of individuals to another " and " toward the government, which is said to be broken by acts of a certain kind. . . . Any riotous, forcible, or unlawful conduct or procedure *is a* breach of the peace. Offenses against the public peace include all acts affecting the public tranquillity, such as assault and battery, riots, routs, and unlawful assemblies, forcible entry and detainer," etc. 4 Blk. Com. 142. What happened was in a place to which the public generally was invited, and in the presence of numerous citizens who had a right to be there, and was clearly a disturbance of the peace of that community and the persons present.

II. May a city or incorporated town declare acts offenses against the municipalities, and prescribe punishments therefor, when the same acts are denounced as misdemeanors by the statutes of the State and punished accordingly? If

such power is specifically conferred, the authorities agree
that it may be excised. The conflict arises in
determining whether such authority is to be
implied from statutes conferring general
powers upon municipalities to enact such
ordinances. This court is committed to the doctrine that if
the subject of the ordinance is fairly within those powers con-
ferred upon the town or city, the mere fact that the matter
has been covered by statute will not invalidate the ordinance.
This was settled in *Town of Bloomfield v. Trimble*, 54
Iowa 399. In that case an ordinance denouncing intoxi-
cation and fixing a penalty was upheld, though there was a
statute to the same effect. But the scope of the statutes con-
ferring such powers have been somewhat narrowly limited.
Thus in *City of Mt. Pleasant v. Breeze*, 11 Iowa, 399, an
ordinance punishing the keeping of gambling devices was not
within a statute investing the city with authority " to sup-
press gambling;" and in *City of Chariton v. Barber*, 54
Iowa, 360, a statute empowering cities " to suppress and
restrain " houses of ill fame was held not to authorize the
enactment of an ordinance declaring the keeping of such
houses a misdemeanor and prescribing punishment therefor.
In *Town of New Hampton v. Conroy et al.*, 56 Iowa, 498,
the above decisions were followed, and the ordinance
concerning the sale of prohibited liquors held invalid,
because prohibited by fair implication of the statute. In *City
of Centerville v. Miller*, 57 Iowa, 56, an ordinance denounc-
ing the keeping of any house where loud or unusual noises are
permitted, or persons are permitted to congregate and engage
in the use of profane or vulgar language to the disturbance
of others, was held to have been authorized by a statute con-
ferring power to prevent noise, disturbance, or disorderly
assembly. The court refused to extend the foregoing decis-
ions, intimating doubt as to their correctness. In *Incor-
porated Town of Nevada v. Hutchins*, 59 Iowa, 506, it was
held that power " to cause any nuisance to be abated " did

2. CITIES AND
TOWNS: police
power: pun-
ishment of
crime: ordi-
nances.

not authorize the city to enact an ordinance punishing persons for obstructing the streets. And yet in *City of Ottumwa v. Chinn,* 75 Iowa, 405, the court held that the abatement of a nuisance must be through the enactment of an ordinance rather than by suit in equity. And such an ordinance was approved in *City of Knoxville v. C., B. & Q. R. Co.,* 83 Iowa, 636. · See *Foster v. Brown,* 55 Iowa, 686, where the policy of permitting cities to undertake the punishment of acts by different penalties than those denounced on wrongdoers by the state is challenged as tending to impair the administration of criminal justice. In *Iowa City v. McInnerny,* 114 Iowa, 586, an ordinance prohibited keeping a saloon open on election day, enacted by virtue of a statute authorizing cities and towns " to adopt from time to time rules and ordinances for further regulating and controling such traffic not in conflit with the provisions of this chapter."

As under the mulct law keeping open on election day was prohibited, and doing so would result in removing the bar and render the keeper liable to the infliction of a statutory penalty much in excess of that provided by the ordinance, the ordinance was held inconsistent with the statute. The case does not purport to overrule Bloomfield· v. Trimble, *supra,* but to distinguish it, and the sentence, "Surely, then, an ordinance covering a subject already fully covered by an act of the Legislature is in conflit therewith," should be construed in connection with the previous discussion. In *Incorporated Town of Sibley v. Lastrico,* 122 Iowa, 211, the ordinance was upheld on the ground that punishment for allowing a dog to run at large had not been fixed by statute, but was impliedly authorized to· be provided by ordinance. In *Incorporated Town of Avoca v. Heller,* 129 Iowa, 227, the ordinance prohibited any person from beating, striking, or fighting another within the corporate limits, and this was held to have been authorized by the statute conferring certain powers upon the municipality, and not to be inconsistent

with the statutes of the state denouncing assaults and bat-
teries and affrays.  In *Blodgett v. McVey*, 131 Iowa, 552, the
statute expressly authorized the enactment of an ordinance
prohibiting gambling, and is in harmony with all the authori-
ties, for where the power is explicitly conferred there is
no room for debate as to whether it has been conferred.  In
some states the municipalities are expressly prohibited from
punishing acts which are denounced by statute.  See *City
of Indianapolis v. Huegle*, 115 Ind. 581, (18 N. E. 173.)
In the absence of such limitations and where the powers
are general, as in this state, the authorities are in sharp
conflict as to whether the power to punish an act, through the
enactment of an ordinance, for which a penalty is prescribed
by the Legislature, is ever to be inferred.  See *Thrower v.
City of Atlanta* (Ga.), 1 L. R. A., (N. S. 1905) 382, and
note; also 1 Smith on Corp. section 519 et seq.

The arguments against such implications are that the
criminal laws of the state should be uniform in the elements
that make up the defense, the penalties denounced, and in
the form and procedure to prosecute; that it is the province
of the Legislature alone to declare what shall constitute a
crime and prescribe the punishment thereof; that the offense
against the criminal laws of the state is the same offense, in
whatever locality committed, and should subject the offender
to the same punishment; and that the attempt to exercise
such powers by the municipality might impair the adminis-
tration of criminal justice.  But none of these considerations
are fundamental and, as experience has demonstrated, none
are of controlling importance.  The central thought through-
out is that the statute and ordinance create the same offense.
But this is not so. Municipal corporations " are bodies politic
and corporations vested with political and legislative pow-
ers for local civil government and police regulations of the
inhabitants of particular districts included in the bound-
aries of the corporations."  They are in many respects local
governments established to aid the government by the state.

The necessity of their organization may be found in the density of the population of localities and the conditions incidental thereto. Because of this, regulations peculiar to a particular community have proven essential to the accomplishment of its objects. Many acts are far more injurious, and the temptation to commit them much greater, in such localities than in the state at large, and, when done, are not only wrongs to the public at large, but additional wrongs to the corporations within which perpetrated. When made penal by both state and city or incorporated town, each becomes a separate offense against the state and against the municipality. The penalty imposed by the city or town is superadded to that fixed by statute on account of the additional wrong done, so that the wrongdoer is not punished twice for the same offense, but for two offenses arising from the same act. In *Moore v. State of Illinois,* 14 How. (U. S.) 19, (14 L. Ed. 306), the court, in holding that an act such as harboring a slave may be an offense against both the government of a state and the general government, said: " An ' offense,' in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace in consequence of the same act, and may be said in common parlance to be twice punished for the same offense. Every citizen of the United States is also a citizen of a state or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. . . . That either or both may, if they see fit, punish such an offender, can not be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offense, but only that by one act he has committed two offenses, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other."

The object of such an ordinance is not to punish an

offense against the criminal justice of the entire state, but to provide a mere police regulation for the maintenance of good order and the protection of the comfort, health, and morals of the people of the particular community. The offense against the corporation and that against the state are wholly disconnected, and are to be distinguished the one from the other, as the prosecution at the instance of each proceeds upon a different hypothesis; the one contemplating the maintenance of peace and welfare of the city, while the other has a wider scope—the peace and dignity of the state. *Mayor et al. v Allaire,* 14 Ala. 400. The entire matter is well stated by Mr. Justice Taylor in *Theisen v. McDavid,* 34 Fla. 440 (16 South. 321, 26 L. R. A. 234), where it is said that the overwhelming weight of authorities support the rule;

That there is no impropriety, from a constitutional standpoint, in clothing our municipal governments with legislative power to prohibit and punish by ordinance any act made penal by the State laws, when perpetrated within municipal limits, and that it is no objection to such an ordinance that it prescribes the same penalties as the State law for the commission or omission of the same act, and that the offender may be tried and punished for the same act under both the ordinance and the State law, and that a conviction or acquittal under the one is no bar to the prosecution under the other, and that it is no objection to the municipal ordinance that the trial thereunder is without a jury. In avoidance of the theory that such a status of the law subjects the offender to the constitutionally inhibited second jeopardy and punishment for the same offense, the question is assimilated to the dual trials and punishments, the one in the federal courts, the other in the State tribunals, that follow the same act when it infracts both a State law and congressional legislation. Instead of its resulting in two trials and punishments for the same offense within the contemplation of the constitutional inhibition, it is regarded as two distinct offenses growing out of the same act; the one being a transgression of the State law, and the other an infraction of the municipal law. A crime

is defined by Blackstone (4 Bl. Com. 5) as being an act committed or omitted in violation of a public law either forbidding or commanding it. Within the contemplation of the constitutional inhibition against dual jeopardy for the same offense, our municipal governments are regarded as separate and distinct bodies politic from the government of the State, so that the same act may be a violation of, and consequently a crime against, the laws of both governments; the criminal aspect of the act consisting of its violation of law. The offense, so far as the municipality is concerned, is complete, independent, and distinct when a municipal law is violated, and the punishment follows from a violation of its law without reference to the infraction of the law of any other government. The Constitution does not prohibit a second jeopardy for the same act, but forbids the second jeopardy for the same offense.

The principle that an act may constitute two offenses, one against the state and the other against a city or town, and that conviction of one may not be pleaded as constituting former jeopardy, as well as that authority to enact an ordinance with reference thereto is included in the general powers conferred on cities and towns by statute, seems to have the support of most of the cases and text-writers and is sound. Town of Van Buren v. Wells, 53 Ark. 368 (14 S. W. 38, 22 Am. St. Rep. 214); State v. Fourcade, 45 La. Ann. 717, (13 South. 187, 40 Am. St. Rep. 249); McInerney v. City of Denver, 17 Colo. 302 (29 Pac. 516); Hughes v. People, 8 Colo. 536 (9 Pac. 50); Shafer v. Mumma, 17 Md. 331 (79 Am. Dec. 565); State v. Oleson, 26 Minn. 507 (5 N. W. 959); City of Brownville v. Cook, 4 Neb. 101; State v. Bergman, 6 Or. 341; State v. Williams, 11 S. C. 288; Bishop on Statutory Crimes (1st Ed.) section 23; State v. City of Topeka, 36 Kan. 76 (12 Pac. 310, 59 Am. Rep. 529); Greenwood v. State, 6 Baxt. (Tenn.) 567 (32 Am. Rep. 539); Johnson v. State, 59 Miss. 543; Wragg v. Penn Tp., 94 Ill. 11 (34 Am. Rep. 199); City of St. Louis v. Cafferata, 24 Mo. 96; (17 Am. & Eng. Ency. of Law, 252; Theisen v. McDavid, 34 Fla. 440 (16 South.

321, 26 L. R. A. 234) ; *Ogden v. City of Madison,* 111 Wis. 413 (87 N. W. 568, 55 L. R. A. 506) ; Dillon on Municipal Corporations, section 367 et esq. ; Cooley's Con. Lim. (5th Ed.) 241 et seq.  See, *contra, State v. Cowan,* 29 Mo. 330.

III.   Section 680 of the Code confers on cities and towns the power to enact " ordinances not inconsistent with the laws of the state, for carrying into effect or discharging the power and duties conferred by this chapter, and such as shall be necessary and proper to provide for the safety, preserve the health, improve the morals, order and comfort — of such corporation and the ·inhabitants thereof." That the acts prohibited by the ordinance were inimical to good order and degrading to morals is too much manifest for discussion.   The prompt suppression of affrays, assaults and battries, and other kindred offenses, and the punishment of the offender, is certainly requisite to the maintenance of good order in a city or town, and ordinarily may be accomplished with greater efficiency in the municipal courts, without the intervention of juries, than by prosecution under the statutes of the state.   It follows that the court errored in directing the acquittal of the accused.

*Reversed,* but not remanded.