STATE OF IOWA, appellee, v. GILBERT LEONARD, appellant.

No. 50891.

(Reported in 124 N.W.2d 429)

November 12, 1963.

Rehearing Denied February 11, 1964.

K. L. Kober, of Waterloo, for appellant.

Evan L. Hultman, Attorney General, Walter L. Saur, Fayette County Attorney, and J. G. Johnson, Assistant County Attorney, for appellee.

Stuart, J.—Defendant was convicted of violating section 728.1 of the 1958 Code of Iowa, which provides:

"If any person publicly use blasphemous or obscene language, to the disturbance of the public peace and quiet, he shall be imprisoned in the county jail not exceeding thirty days, or be fined not exceeding one hundred dollars."

In view of the trial court's findings, the evidence must be viewed in the light most favorable to the State. State v. Rutledge, 243 Iowa 179, 47 N.W.2d 251. Defendant called the city clerk of Oelwein over the telephone from his own home. The call was received in the clerk's private office which is a small room located in the northwest corner of the clerk's main office in the town hall of Oelwein. In the main office are two desks which form a counter and the public comes into this office to pay water bills, issue complaints and obtain information. Although there is no need for the public to go beyond the desks, they may enter the clerk's private office without permission.

The door to the private office is open at all times unless there is a special conference going on. During the telephone conversation the defendant said to the clerk: "I'll punch you in the nose, you son-of-a-bitch" and hung up. The defendant spoke so loudly the clerk had to hold the receiver away from his ear and this statement was heard by Mayor Louis T. Lonborg who was sitting at the clerk's desk and Jeanette Alsip who was working out in the main office. No other persons were present at the time.

I. Defendant's principal contention is that this evidence is not sufficient to establish the elements of the offense created by section 728.1, 1958 Code. Consideration of this argument requires us to interpret a statute which has not been before this court previously, although it has been in the Code for more than 65 years. The minor nature of the offense does not make the issues less troublesome and we are handicapped by the lack of authorities in point from other jurisdictions.

To sustain the conviction there must be evidence which would support a finding that the defendant (1) used obscene language, (2) publicly, (3) "to the disturbance of the public peace and quiet". Defendant claims "you son-of-a-bitch" is not obscene within the intent and meaning of section 728.1. In support of his position he quotes definitions of "obscene" which limit its meaning to matters which deal with sex "in a manner appealing to the prurient interests". He contends the words do not incite the hearers to lewd, lascivious and lustful thoughts and desires.

The rule is well settled that criminal statutes are to be strictly construed and should not be held to include charges which are not within the fair scope and intendment of the statute. State v. Hill, 244 Iowa 405, 57 N.W.2d 58, and citations. We are not required by this rule to apply the narrowest definitions given in the dictionaries to the words used in the statutes. If other accepted and approved definitions seem to have been the sense in which the legislature intended to use the words, they may be considered without violating the rule.

We have quoted, with approval, in Kuhn v. Kuhn, 125 Iowa 449, 452, 101 N.W. 151, 2 Ann. Cas. 657, and State v. Hill, supra, the statement of Chief Justice Marshall in the case of

United States v. Wiltberger, 5 Wheat. (U. S.) 76, 5 L. Ed. 37, in which he said: "* * * though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no reason for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute because it is of equal atrocity or of kindred character with those which are enumerated."

Webster's Third New International Dictionary contains the following definition of obscene: "2: offensive or revolting as countering or violating some ideal or principle: as * * * b: marked by violation of accepted language inhibitions and by the use of words regarded as taboo in polite usage * * *."

Black's Law Dictionary, 4th Edition, contains the following definition: "Offensive to chastity of mind or to modesty, expressing or presenting to the mind or view something that delicacy, purity, and decency forbids to be exposed; offensive to modesty, decency, or chastity; impure, unchaste, indecent, lewd; offensive to senses; repulsive; disgusting; foul; * * *." We must therefore look at the wording of the statute to determine which definition the legislature intended to apply to the term obscene.

■■ This particular statute, by its very wording, seeks to protect the public peace rather than public morals. It is not found in chapter 725 of the Code of Iowa, which deals with matters of obscenity and indecency as they affect the public

morals by appealing to the prurient sexual interests. Many words and expressions which do not fit within the limited meaning urged by the defendant tend to incite the hearers to conduct likely to disturb the public peace. Few terms have provoked more violent reactions or triggered more affrays than the term applied to the complainant by the defendant. Its use is often considered an open invitation to a fight. We believe the legislature of the late 1800s intended to include "s-o-b" and other similar abusive, insulting, disgusting and revolting terms among the prohibitions of the statute. If we were to say it is not within the meaning of obscene, a person, with impunity, could publicly announce that "so and so is a s.o.b." or walk down the street applying the term indiscriminately to every passerby. The more inclusive definition of obscene conforms more closely to the purpose of the statute. "Son of a bitch" has been held to be obscene in Texas, Darnell v. State, 72 Tex. Cr. 271, 161 S.W. 971. We intimated we so considered the term in Town of Neola v. Reichart, 131 Iowa 492, 109 N.W. 5. We need not consider if the phrase is lewd or lascivious although in Bailey v. Bailey (1895), 94 Iowa 598, 601, 63 N.W. 341, 342, this court said: "The word 'bitch' is synonymous with 'wench' or 'hussy', and often implies lewdness."

▮▮ II. Defendant contends the words uttered over the phone in a call from defendant's home to the city clerk's private office were not used publicly. The fact that the phone call originated in the defendant's home is unimportant. The offense is determined by the public or private nature of the place where the call is received or the words heard. The Supreme Court of South Carolina expressed this thought in the case of State v. Byrnes, 100 S. C. 230, 236, 237, 84 S.E. 822, 824, in which they said: "The 'castle' is given to a man for defense, and not for offense. It would be a hurtful and unreasonable doctrine to hold that a man may utter profanity of a loud and boisterous nature from his own storeroom, and yet not be amenable to the public therefor. If the utterer does remain in the room the utterance does not; and it is the offense."

We need not decide whether the clerk's private office was a public place under these facts, for the evidence is that defendant

spoke so loudly that a witness working in the main office, which is without question open to the public, overheard the conversation and the obscene words of the defendant. The clerk's office is a public place and the words were heard and understood by a person in this office.

III. Defendant also contends the State did not show public peace and quiet was disturbed. He claims the language is not sufficient unless accompanied by threat of immediate violence and there was no such threat because the words were spoken over the telephone from a distance. At common law such threats were necessary, 11 C. J. S. 817, Breach of Peace, section 1; 48 A. L. R. 84. However, many states have adopted statutes varying greatly in form and content which have been held to make the use of spoken words a criminal offense under differing circumstances. Some are general statutes making breach of peace an offense, some make it unlawful to use threatening or quarrelsome language, some prohibit words calculated or tending to cause a breach of the peace and others, including Iowa, specify vulgar, profane, obscene, insulting, blasphemous and similar words. The Iowa statute also provides that such language shall be used "to the disturbance of the public peace and quiet". This does not mean that such language must be accompanied by threats of immediate violence.

Public peace is defined as that "tranquillity enjoyed by the citizens of a municipality or community where good order reigns among its members." Town of Neola v. Reichart, 131 Iowa 492, 494, 109 N.W. 5; 11 C. J. S. 817, Breach of Peace, section 1. It is disturbed by any obscene language which has a tendency to incite the one to whom it is addressed or other hearers to a breach of peace although unaccompanied by threats. Whether the use of the words constitutes a breach of peace is determined by all the circumstances surrounding their use, including the type of person who uses the language as well as the persons who hear it, the manner in which it is used, and the occasion for its use. The term herein involved is a good example of the importance of considering the circumstances to determine whether or not its use constitutes a breach of the peace. It is, on occasions, used as an expression of great affection between

men who are close friends. The circumstances here indicate it was uttered in anger to a person with whom the utterer was not friendly and was accompanied by a threat of violence which indicates its unfriendly use although the threat could not be immediately carried out. A lady who heard the expression testified it was offensive to her. We cannot say as a matter of law the use of the term "son-of-a-bitch" in this case was not a breach of the peace. For a full discussion of this issue see the annotation in 48 A. L. R. starting at page 81 and later cases cited in the Blue Book Supplemental Decisions.

IV. Appellant charges the information filed in the Justice of Peace Court was insufficient in certain respects which we need not consider as the information was amended before trial on appeal to the district court. It is well settled that an information may be amended after appeal to the district court. City of Des Moines v. Reiter, 251 Iowa 1206, 102 N.W.2d 363; City of Ottumwa v. Stickel, 195 Iowa 988, 191 N.W. 797; Town of Lovilia v. Cobb, 126 Iowa 557, 102 N.W. 496; State v. Reilly, 108 Iowa 735, 78 N.W. 680. The defendant did not challenge the sufficiency of the amended information. There is no merit in this assignment of error.

V. Appellant claims section 728.1 does not cover telephone conversations because it was enacted before telephones came into common usage and we have no statute making the use of obscene language over the telephone a criminal offense. The language of the statute is broad enough to cover any means by which blasphemous or obscene language is disseminated to the public disturbing its peace and quiet. If a telephone is used in such a manner and under such circumstances that the necessary elements of the crime charged in the statute are present, the defendant is not saved from prosecution by the mere fact he was using a telephone. A telephone conversation in complete privacy in which obscene language was used would not come within the prohibitions of this section.

We find no error and this case is therefore affirmed.— Affirmed.

All JUSTICES concur except THORNTON, J., who dissents.

Thornton, J. (dissenting)—I dissent.

From the language of the majority opinion it is fair to say two or more meanings may be attributed to the word "obscene". I think this alone entitled the defendant here to the benefit of strict construction of a criminal statute. Actually an examination of the complete definitions of obscene in Webster's Third New International Dictionary and Black's Law Dictionary, 4th Edition, shows that obscene, when considered offensive, revolting, disgusting or foul, is because it is based on the idea of unchastity or lewdness. That is the connotation of the word. See chapter 725, Code of Iowa, 1962, and 29 Words and Phrases, Perm. Ed., page 68 et seq., and 1963 pocket parts, pages 22 to 28.

However, the majority admits of two possible constructions. This brings into play the rule that in case of doubt the statute is construed most favorably to the defendant and strictly against the State. The majority opinion quotes from Kuhn v. Kuhn, 125 Iowa, 449, 452, 101 N.W. 151, 152, 2 Ann. Cas. 657, and State v. Hill, 244 Iowa 405, 408, 57 N.W.2d 58, 59, the statement of Chief Justice Marshall in United States v. Wiltberger, 5 Wheat. (U. S.) 76, 5 L. Ed. 37. A portion thereof is: "* * * though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases, which those words, in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend."

What the majority does here is decide what to it is obvious and ordinary acceptation. The reason apparently given is that if we do not adopt that definition the defendant goes unpunished. The mere statement of such a reason shows its fallacy.

Actually the legislature has provided that cities and towns may punish persons engaged in riotous, noisy or disorderly conduct. See section 368.7, Code of Iowa, 1962. In section 728.1 it sought only to punish a person publicly using blasphemous or obscene language to the disturbance of the public peace and quiet. It is not only the public peace and quiet the legislature

was interested in but disturbance in a particular way, by blasphemous or obscene language.

If the defendant is to go unpunished it may be because he was charged with the wrong offense. We should not provide an offense and punishment. Marshall warned against this.

The defendant is entitled to have the benefit of the rule of construction of penal statutes long followed by us, that the legislature must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid. State v. Coppes, 247 Iowa 1057, 1061, 1062, 78 N.W.2d 10; State v. Garland, 250 Iowa 428, 432, 94 N.W.2d 122, 125; and authorities cited. In State v. Garland at page 432 of 250 Iowa, page 125 of 94 N.W.2d, we said: "It is well settled that penal statutes are strictly construed, and doubts, if any, resolved in favor of the individual."

Where the definition of a word is open to more than one construction there is certainly doubt. If the legislature wished to include "s-o-b" and other similar abusive, insulting, disgusting and revolting terms, why did it not use those terms? That is just what the Texas legislature did. See Darnell v. State, 72 Tex. Cr. 271, 272, 161 S.W. 971. The statute there provided, " 'If any person shall use any vulgar, profane, obscene or indecent language over or through any telephone * * *.' "

The trouble here is not with the legislature but with interpretation of "obscene" in the majority opinion. If obscene may fairly mean both everything that is insulting as well as only those words that refer to sexual impurity or lewdness, defendant is entitled to the construction most favorable to him and a reversal. If its meaning is reference only to sexual impurity or lewdness, defendant is entitled to a reversal. Nothing is less likely to appeal to prurient interests than for one man to say to another, "I'll punch you in the nose, you son of a bitch." Vulgar certainly, fighting words yes (but hardly at the safe distance of a telephone).

A matter of extreme doubt is whether the words were publicly used to the disturbance of the public peace and quiet. The public in this instance was a rather small group of three.