The City of Indianapolis v. Huegele.

No. 14,307.

THE CITY OF INDIANAPOLIS v. HUEGELE.

STATUTE.—*Metropolitan Police Act of 1883.*—*Construction.*—*Criminal Law.*—*Interfering with Policeman.*—*City of Indianapolis.*—*Ordinance.*—By the provisions of section 10 of the metropolitan police act of 1883, the interfering with or interrupting a member of the police force therein provided for, when making an arrest, is made a criminal offence, and a city ordinance of said city covering the same ground is, under section 1640, R. S. 1881, ineffective and void.

CONSTITUTIONAL LAW.—*Section 10, Metropolitan Police Act, Constitutional.*—*Title of Act.*—Section 10 of the metropolitan police act of 1883 is embraced within the title of the act, and is constitutional.

From the Marion Circuit Court.

*W. L. Taylor* and *H. E. Smith*, for appellant.

*J. N. Scott*, for appellee.

ZOLLARS, J.—Section 2 of an ordinance of the city of Indianapolis, passed in 1866, is as follows:

"Any person who shall wrongfully interfere with any policeman or officer of said city, while making an arrest, shall be fined in any sum not exceeding one hundred dollars."

Can appellee be fined under this ordinance for having interfered with a policeman in making an arrest in 1887? If he can, the judgment must be reversed. If he can not, the court below ruled correctly, and the judgment must be affirmed.

Section 67 of the criminal procedure act of 1881, R. S. 1881, section 1640, provides that ".Whenever any act is made a public offence against the State by any statute and the punishment prescribed therefor, such act shall not be made punishable by any ordinance of any incorporated city or town; and any ordinance to such effect shall be null and void, and all prosecutions for any such public offence as may be within the jurisdiction of the authorities of such incor-

porated cities or towns, by and before such authorities, shall be had under the State law only."

If, then, the interfering with an Indianapolis policeman in the making of an arrest is made a public offence against the State by any statute, and the punishment prescribed therefor, this prosecution by the city under .the ordinance can not be maintained. To determine that question, we must look to the metropolitan police act of 1883, Acts 1883, p. 89, under which the police force of Indianapolis is appointed. That act provides for a metropolitan police, and the establishment of a board of metropolitan police commissioners, in cities of twenty-nine thousand or more inhabitants, according to the census of 1880, and for the appointment by such board of a superintendent of police, captains, sergeants, detectives, and such other officers and patrolmen as they may deem advisable, etc. Section 10 of the act is as follows : "Any person or persons, or corporation, or common council, or other municipal, township, county, or State officer or officers, who shall in any manner interfere with or interrupt the board of metropolitan police commissioners of such city, in any act of theirs, while in the legal discharge of their duties, as provided in this act, or of the police force herein authorized to be created, or shall prevent such board or force from discharging their duties, as defined in this act, shall, upon conviction before the mayor or city judge, or before the circuit or criminal court of said county, be fined not less than one hundred dollars nor more than one thousand dollars ; to which may be added imprisonment for not less than ten days nor more than ninety days, for each separate offence."

Counsel for appellant contend that this statute does not make an interruption, interference with, or. the resisting of, a police officer or patrolman an offence. They say : " It is maintained by the city that section 10 of the act above quoted, makes provision only against the interference with the board of metropolitan police commissioners, and prescribes a penalty

only for such persons as have power to interfere with, and interrupt, the board of metropolitan police commissioners."

They insist that the real purpose of the section may be discovered by interpreting it to read as follows: "Any person * * * who interferes with or interrupts the board of metropolitan police commissioners of such city in any act of theirs, * * * or of the police force," etc. They say: "The board of metropolitan police commissioners (of the city) is the only object of the verbs. This object is modified by two phrases—prepositional phrases: 1st. In any act of theirs. 2d. Or of the police force, etc. The board being the only object, the interference can only be with it," etc.

In their reply brief they say further: "The bill offers no protection to an officer at all, and was not designed to do so. It was not designed to change anything except the method of appointing the city's police force. The point the city contends for is, that any such an act as interferes with the working of this new method of appointment, or with the new system of appointment, is punishable under section 10 of the metropolitan police bill," etc.

Counsel for appellant also contend that if it should be conceded that section 10 provides a penalty for interfering with, or interrupting the police force, it is only for interrupting or interfering with the force as a collective body, when acting as a body, and does not apply when such interruption or interference is with a single policeman in the discharge of his duties.

Without following the arguments in detail, these statements and quotations from appellant's briefs show, in general, the position of its counsel upon this branch of the case.

After a careful examination of section 10, *supra,* and the whole of the metropolitan police act, we are unable to give our sanction to the construction contended for by appellant's counsel.

That section 10 makes certain acts as connected with the

police force an offence, and prescribes a punishment for persons guilty of such acts, we think is quite clear.

Omitting for the present that portion of the section which provides against interruptions and interference, and noticing that "such board and force," immediately following, mean board of metropolitan police commissioners and police force, the section may be read thus : Any person or persons, etc., who shall prevent the board of metropolitan police commissioners, or police force, from discharging their duties as defined in this act, shall, upon conviction, etc., be fined, etc. The board of metropolitan police commissioners and police force are both objects of the verb, and to prevent either of them from discharging their duties as defined in the act is an offence for which the same punishment is provided.

It yet remains to be determined whether the offence defined can be committed only against the police force when acting as a body, as contended by counsel. That the Legislature did not so intend seems clear to us. In the first place, occasions requiring the united action of the whole force must be very rare. A riot would be such an occasion, but riots are not likely to occur in Indianapolis, nor, indeed, in any of our cities.

The police force provided for by the act have not authority to act collectively or otherwise in the establishment of rules and regulations for the government of the force. That authority is given by the act to the board of metropolitan police commissioners. It is hardly reasonable, therefore, to suppose that the Legislature intended to provide against preventing the police force from discharging their duties while acting as a body, when they so rarely thus act, and intended, also, to leave the officers and members of the force without any sort of protection when acting separately in the discharge of their duties. In the second place, we think, that, looking to the act as a whole, it is manifest that the intention was to provide against preventing the discharge of duty on the part of the force whether acting as a body or individually, and

more especially when acting individually, as in that capacity about all the service of the force is rendered.

The language of section 10 is, any person, etc., who shall prevent the board and force from discharging their duties "as defined in this act." The duties of the board are defined, and so, too, are the duties of the police force defined in the act, but, as to the police force, the duties so defined are the duties to be performed by the force when acting separately as officers and patrolmen, constituting the force.

The 6th section of the act, for example, provides that the officers and members of the metropolitan police force shall possess all the common law and statutory powers of constables, except for the service of civil process.

It is provided by the 8th section that the members of the metropolitan police force shall have the exclusive power, and it shall be their duty, to serve all process within such city issuing from the mayor or city judge, etc., etc.

If section 10 does not provide a penalty for preventing the policemen from discharging their duties, it provides nothing in relation to the police force, because, as above stated, the offence defined in the act is the preventing of the force from discharging the duties defined in the act. The duties defined in the act to be performed are not to be performed by the force acting in a body, but when acting separately. Therefore, if the section is to have any force and practical application, it must be construed as meaning that any person who shall prevent policemen from discharging the duties defined in the act, shall be guilty of an offence and punished.

Looking to the whole act, we are clearly of the opinion that it must be so construed. Looking to the whole act, it is apparent that "police force" was used by the law-makers as meaning, not only the force as a body, but also the constituent members of that body. In that sense "police force" seems to have been used in other sections of the act.

In the 5th section it is provided that the board of metro-

politan police commissioners shall "exercise the entire control of the police force of such city." That, evidently, means that the board shall exercise control over the force as a body, and over the individual members constituting the body. So, in section 11, it is provided that additional policemen, to be appointed in certain cases, "shall conform to the general discipline of the police force of such city," etc. Here again, the discipline of the "police force" is not limited to the force acting as a body, but includes the individual members constituting the force.

Policemen, appointed under the act, undoubtedly have authority to arrest violators of the law, and what they have authority to do it is their duty to do. Any person who may prevent them from discharging such a duty will be guilty under the act.

Having decided this much, we are brought to the specific question as presented by the record before us.

Appellee was not arrested upon a charge of having prevented the policeman from discharging his duty, but upon a charge of having interfered with that officer when making an arrest of a violator of the law; in other words, in the language of section 10, *supra,* upon a charge of having interrupted and interfered with that officer in an act of his while in the discharge of his duty.

Section 10 clearly makes it an offence for any one to interrupt or interfere with the board of metropolitan police commissioners in the discharge of its duties, and to prevent it from discharging those duties. It just as clearly, as we have seen, makes it an offence to prevent the police force from discharging their duties.

Did the Legislature intend to thus make it an offence to prevent the police force from discharging their duties, but in no way protect them from interruption and interference in the discharge of those duties? Was it the intention that an interference and interruption shall not be within the inhibition until they shall reach the extent of preventing the police-

men from discharging their duties? If so, the protection to policemen in the discharge of their duties is of but little practical consequence.

The construction put upon the section by appellant's counsel, it seems to us, would not accomplish the end which they seek to accomplish.

Their position is, that the interference and interruption inhibited have reference to the board of metropolitan police commissioners alone, and that such interruption or interference of the board must be in some act of theirs or in some act of the police force. Here, again, we have no doubt that " police force " must be taken to mean not only the force as a body, but, also, the members of the force, collectively and individually. Bishop Statutory Crimes, section 213.

If it be said that under section 10, *supra*, there can be such a thing as interrupting and interfering with the board of metropolitan police commissioners in an act of the policemen, a person who should so interfere or interrupt will be liable to the punishment prescribed by the section, and hence can not be prosecuted under the ordinance.

But the construction of section 10 contended for can not be the correct one. To give it that construction renders it awkward, and almost, if not quite, meaningless. Taking the section as a whole, we think it may be said that it is apparent that the Legislature intended to make it an offence for any person to interrupt or interfere with the board or police force in the discharge of their duties, or to prevent them, or either of them, from discharging their duties as defined in the act. That purpose should be carried out, if it can be done under the rules of construction of statutes. In the phrase, " or of the police force herein authorized to be created," the use of the preposition " of " is, doubtless, a grammatical mistake. Disregarding that, the section may be made to read as we have suggested it ought to read.

It has often been stated by the courts, that in the construction of statutes the prime object is to ascertain and carry out

the purpose and intent of the authors; that to do this the words used should first be considered in their literal and ordinary signification ; that if, by giving them such a signification, the meaning of the whole instrument is rendered doubtful, or is made to lead to contradictions, or absurd results, the intent, as collected from the whole instrument, must prevail over the literal import of terms, and control the strict letter of the law. *State, ex rel.*, v. *Mayor, etc.*, 28 Ind. 248; *Smith* v. *Moore*, 90 Ind. 294 (305) ; *City of Valparaiso* v. *Gardner*, 97 Ind. 1 (6) ; *City of Evansville* v. *Summers*, 108 Ind. 189.

So, it has been said, that it is an established rule, applicable to the construction of all remedial statutes, that cases within the reason, though not within the letter of a statute, shall be embraced by its provisions, and that cases within the reason, though not within the letter, shall be taken to be within the statute. *State* v. *Canton*, 43 Mo. 48; *People* v. *Lacombe*, 99 N. Y. 43 ; *Middleton* v. *Greeson*, 106 Ind. 18.

It is well settled that criminal statutes are to be strictly construed, but it is also well settled that they, like all other statutes, must be given a reasonable construction, and one that will, if possible, carry out the intention of the lawmakers.

Mr. Bishop, in his work on Statutory Crimes, at section 200, says : " Equally in strict interpretation as in liberal, the object is simply to ascertain the true legislative will,—to arrive at which, is the end of all interpretation. A rendering so strict as to defeat this will is never admissible."

At section 212 it is further said : " It is not a violation of the rule of strict construction to give the words of a statute a reasonable meaning, according to the intent of the makers, disregarding captious objections, and even the demands of an exact grammatical propriety."

Again, at section 243, it is said : " However desirable a correct use of the English language may be, the courts have no jurisdiction to enforce it on the Legislature. Therefore,

as already seen, when the legislative meaning is plain, the exact grammatical construction and propriety of language may be disregarded, even in a penal statute. * * The conjunction ' and ' will be read as ' or,' and ' or ' as ' and,' when the sense obviously so requires."

At section 215, the author correctly states the ruling in the case of *Worrell* v. *State*, 12 Ala. 732, as follows: "An Alabama act made it punishable to ' buy, *sell,* or receive *from* any slaves,' certain things without his master's consent. And it was held to be infringed by a sale *to* the slave; for its obvious meaning should not be defeated by the inaccurate use of a preposition."

In speaking of the case of *State* v. *Acuff*, 6 Mo. 54, the author further says: " In the following statute of Missouri, the second ' of '—printed in italics—is rejected in the construction: ' If any guardian of any white female under the age of eighteen years, or *of* any other person to whose care or protection any such female shall have been confided, shall defile her by carnally knowing her,' etc.; and thus its penalties extend to persons in care who are not guardians, as well as to those who are."

In the case of *Zorger* v. *City of Greensburgh*, 60 Ind. 1, this court decided that an ordinance of the city of Greensburgh making it an offence to be found associating with certain characters " in a public place, street, alley, common, or within said city limits," meant, and should be construed to mean and read, " in any public place, street, alley, or common within said city," thus making the conjunction " or " to precede instead of to follow the word " common." See, also, *Clare* v. *State*, 68 Ind. 17; *Matter* v. *Campbell*, 71 Ind. 512.

We have thus referred to the rules of construction and cited authorities to show that the preposition " of " above mentioned may be disregarded, in order to render the statute intelligible, and give to it such an interpretation as will carry out the intention of the Legislature in its enactment.

Appellant's counsel further contend that if section 10 defines an offence and prescribes a punishment, that portion of it must be held unconstitutional because not embraced in the title of the act.

Section 19 of article 4 of the Constitution, R. S. 1881, section 115, is, that "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title," etc.

So far as is material here, the title of the act under consideration is as follows: "An act providing for a metropolitan police in all cities of twenty-nine thousand or more inhabitants." That title clearly embraces the establishment and maintenance of a metropolitan police. The establishment and maintenance of such a force is the subject expressed in the title. The provisions in section 10 for the punishment of persons who may interfere with that force in the discharge of their duties, or who shall prevent them from discharging those duties, are clearly, we think, matters properly connected with the subject expressed in the title.

We do not think that it would be profitable to extend this opinion by way of argument in support of this conclusion, and we content ourselves with a citation of some of the numerous cases in which the above section of the Constitution has been interpreted. *Hingle* v. *State*, 24 Ind. 28; *Reams* v. *State*, 23 Ind. 111; *Robinson* v. *Skipworth*, 23 Ind. 311; *Reed* v. *State*, 12 Ind. 641; *Bitters* v. *Board, etc.*, 81 Ind. 125; *Warren* v. *Britton*, 84 Ind. 14; *Crawfordsville, etc., T. P. Co.* v. *Fletcher*, 104 Ind. 97; *Barnett* v. *Harshbarger*, 105 Ind. 410; *State, ex rel.,* v. *Sullivan,* 74 Ind. 121; *Shipley* v. *City of Terre Haute*, 74 Ind. 297; *State* v. *Newton*, 59 Ind. 173; *Farrell* v. *State*, 45 Ind. 371.

Other questions are discussed by counsel which need not be noticed. The court below held that appellee could not be prosecuted under the ordinance. That ruling is correct, for the one sufficient reason, that the acts with which he was

charged are made a public offence and punishable by the metropolitan police act.

Judgment affirmed, with costs.

Filed Oct. 10, 1888.