[File No. 92 Cr.]

CITY OF FARGO, a Municipal Corporation, Respondent, v. JOE GLASER, Appellant.

(244 N. W. 905.)

674

Opinion filed October 25, 1932.

*Clair F. Brickner,* for appellant.

*M. W. Murphy,* City Attorney, for respondent.

BURKE, J. This is an appeal from a judgment of conviction entered in the district court of Cass county on the 15th day of April, 1932. In November, 1931 a complaint was filed in the office of the police magistrate of the city of Fargo, charging the defendant, Joe Glaser, with the offense of driving an automobile while under the influence of

intoxicating liquor in violation of the city ordinance of the city of Fargo.

A demurrer to the complaint was filed on the ground, first, that the police magistrate court had no jurisdiction of the offense charged; second, that the facts stated do not constitute a public offense, and third, the city ordinance under which the act was instituted was invalid. The demurrer was overruled and from a judgment of conviction, the defendant appealed to the district court, where the defendant's demurrer was again overruled and judgment of conviction entered.

It is the contention of the appellant that chapter 162 of the Laws of 1927 is exclusive legislation on the subject matter of the act, except in certain specified matters, in which the city is authorized to act.

It is agreed that there is but one question involved in the case and that is, Did the city of Fargo have authority to pass the ordinance under which the prosecution is instituted.

The ordinance is in part as follows:

"Ordinance 545, city of Fargo, (effective from and after March 17, 1930).

"It shall be unlawful and punishable as provided in section 62 of this ordinance for any person whether licensed or not, who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs, to drive any vehicle upon any highway within this city.

"Every person who is convicted of a violation of § 2 of this ordinance relating to habitual users of narcotic drugs and driving while under the influence of intoxicating liquor or narcotic drugs, shall be punished by a fine of not more than one hundred dollars or by imprisonment in the county or municipal jail for a period not exceeding ninety days, or by both such fine and imprisonment.

"Providing that the court in sentencing any person either for a first or a subsequent violation of this ordinance may suspend any sentence of imprisonment, or any part thereof, and make its order that the person so sentenced shall be precluded from driving any automobile within this city for a period of not to exceed ninety days. Upon proof to the satisfaction of the court that such order has been disobeyed, such suspension shall be by the court revoked."

The difference between the ordinance and the statute is in the punish-

ment inflicted. A violator of the ordinance cannot be fined more than one hundred dollars or be imprisoned in the county or municipal jail for a period exceeding ninety days or by both imprisonment and fine. A violator of the statute may be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars or by imprisonment in a county jail for a period of not exceeding one year or by both such fine and imprisonment. On second or subsequent conviction he shall be punished by imprisonment for not less than ninety days nor more than one year, and, in the discretion of the court, a fine of not more than one thousand dollars. There is also a provision for suspension of sentence and an authority to preclude the defendant from driving an automobile for a period of not exceeding two years.

The purpose of chapter 162 of the laws of 1927 as expressed in its title is, "an act regulating the operation of vehicles on highways and providing for traffic signs and signals and defining the power of local authorities to enact or enforce ordinances, rules or regulations in regard to matters embraced within the provisions of this act and to provide for the enforcement of this act and the disposition of fines and forfeitures collected hereunder and to make uniform the law relating to the subject matter of this act."

One purpose of the act is to define the power of local authorities to enact or enforce ordinances, rules or regulations in regard to matters embraced within the provisions of the act, and the authority of the city to enact the ordinance in question must be sought in the act itself.

Section 21 of the act provides:

"The State Highway Commission with reference to state highways and local authorities with reference to highways under their jurisdiction are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. All such signs shall be illuminated at night or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights."

It will be observed that while this section gives to the state highway commission and to local authorities the authority to designate certain

highways as through highways and the authority to place stop signs thereon, the failure of the driver to stop is a violation of the state law and punishable as provided in § 61, which reads as follows:

"Every person convicted for a violation of any of the provisions of this act for which another penalty is not provided shall·for a conviction thereof be punished by a fine of not more than one hundred dollars or by imprisonment in the county or municipal jail for not more than ten days."

Under subdivision "C" of § 4 of chapter 162 of the 1927 session laws, "Local authorities in their respective jurisdictions are hereby authorized in their discretion to increase the speed which shall be prima facie lawful upon through highways at the entrances to which vehicles are by ordinance of such local authorities required to stop before entering or crossing such through highways. Local authorities shall place and maintain upon all through highways upon which the permissible speed is increased adequate signs giving notice of such special regulations and shall also place and maintain upon each and every highway intersecting any said through highway, appropriate stop signs which shall be illuminated at night or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights."

Section 68 of chapter 162 provides: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

It thus appears to be the intention of the legislators that this act should have uniform operation in the state and in other states.

Section 69 of chapter 162 provides: "This act may be cited as the Uniform Motor Vehicle Act Regulating the Operation of Vehicles."

Section 71 repeals §§ 2972, 2973, 2974, and 2976L Compiled Laws of North Dakota for 1913 and §§ 2976t10 and 2976t12, Supplement to the 1913 Compiled Laws of North Dakota. Sections 2972, 2973, 2974 and 2976 relate to the operation of motor vehicles on the road and § 2976t10 Supplement to 1913 Compiled Laws relates to the operation of a motor vehicle while intoxicated. Section 2976t13 provides the punishment for driving motor vehicles while intoxicated. Thus showing that chapter 162, laws of 1927, is not intended as additional legislation on the subject of motor vehicles, but is a ·complete act in

itself. This further appears in § 65 which provides that: "Whenever any person is arrested for a violation of any provision of this act punishable as a violation, the arresting officer shall, except as otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, such time to be at least five days after such arrest unless the person arrested shall demand an earlier hearing, and such person shall, if he so desire, have a right to an immediate hearing or a hearing within twenty-four hours at a convenient hour and such hearing to be before a magistrate within the township or county wherein such offense was committed."

Section 66 provides: "Every justice of the peace or police magistrate or court in this state shall keep a full report of every case in which a person is charged with violation of any provision of this act."

Section 67 provides: "All fines or forfeitures collected upon conviction or upon forfeiture of bail of any person charged with a violation of any of the provisions of this act shall be disposed of as by law provided."

Section 58 provides: "Local authorities in their respective jurisdictions may cause appropriate signs to be erected and maintained, designating resident and business districts, highway and steam or interurban railway grade crossings and such other signs as may be deemed necessary to carry out the provisions of this act, and such additional signs as may be appropriate to give notice of local parking and other special regulations. Local parking and other special regulations shall not be enforcible against an alleged violator if, at the time and place of the alleged violation, an appropriate sign giving notice thereof, is not in proper position and sufficiently legible to be seen by an ordinarily observant person."

Section 59 prohibits the erection and maintenance of signs, markers, signals or lights by an unauthorized person.

Section 60 provides: "That any person who shall deface, injure, knock down or remove any sign posted as provided in this act shall be guilty of a violation of this act."

Section 33 of chapter 162, laws of 1927, known as the uniform motor vehicle act regulating the operation of vehicles reads as follows:

"Powers of Local Authorities. Local authorities except as expressly authorized by § 4 (c) and § 21 shall have no power or authority to alter any speed limitations declared in this act or enact or enforce any rule or regulation contrary to the provisions of this act, except that local authorities shall have power to provide by ordinance for the regulations of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one way traffic upon certain highways and may regulate the use of the highways by processions or assemblages. Local authorities may also regulate the speed of vehicles in public parks and shall erect in all entrances to such parks adequate signs giving notice of any such special speed regulations."

There is no other provision in the law authorizing local authorities to legislate upon the subject matter of the act and it seems clear that the power of local authorities is defined and limited to the provisions of subdivision C of § 4, § 21, § 33 and § 58.

Subdivision C of § 4 relates to the power of the local authorities to increase the speed upon through highways and the placing and maintaining upon such through highways adequate signs giving notice of such special regulation with appropriate stop signs illuminated at night.

Except as provided in § 4c and § 21, § 33 provides that the local authorities shall have no power or authority to alter any speed limitations declared in this act or to enact or enforce any rule or regulation contrary to the provisions of this act, except that local authorities shall have power to provide by ordinance for the regulation of traffic by means of traffic officers, semaphores, or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one way traffic upon certain highways and may regulate the use of the highways by processions or assemblages. Local authorities may also regulate the speed of vehicles in public parks and shall erect in all entrances to such parks adequate signs giving notice of any such special speed regulations.

The power of local authorities is limited by the act to the authority granted in §§ 4c, 21, 33 and 58. Nowhere in the act is there any authority granted to the local authorities except as provided in the said sections. The sections named do not authorize local authorities to pun-

ish any one for driving an automobile when intoxicated. That offense is covered by the uniform state law and therefore the city had no authority to pass the ordinance in question. This is also the view of the attorney general, who passed upon the question in opinion 478, page 52, Report of Attorney General to the Governor, 1928-1929.

Chapter 162 of the Laws of 1927, known as the Uniform Motor Vehicle Law, which was prepared by experts with the view of making it uniform in every state, is a very comprehensive law regulating the operation of motor vehicles upon the highways in the state and is in fact a complete code upon the subject. It defines highways as "Every way or place of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel." It applies to every street and alley in every city in the state and it has been adopted by Arkansas, Colorado, Delaware, Idaho, Louisiana, Michigan, Minnesota, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Dakota and Utah.

The ordinance involved in the instant case is an exact copy of the Uniform Motor Vehicle Act, except in a very few particulars. The title is practically the same as the title of the statute. It adopts the same definition of "motor vehicle," "motorcycle," "truck tractor," "farm tractor," "road tractor," "trailer," "semi-trailer," "pneumatic tires," "solid rubber tires," "metal tires," "persons," "owner," "highway," "private road or driveway," "intersection," "safety zone," "right of way," "residence district," "business district" as defined in the statute. It adopts without change provisions of the statute regulating the driving of any vehicle upon any highway. It authorizes the state highway commission to conduct the investigation of any public bridge, causeway or viaduct. It regulates the speed of the vehicles on the highway. It makes it unlawful to drive any vehicle upon any public bridge, causeway or viaduct. It provides that upon all highways except one way streets, the driver shall drive the same upon the right half of the highway. It provides that the driver shall keep to the right crossing intersections or railroads, regulates the conduct of vehicles meeting or overtaking a vehicle, in fact it is the Uniform Motor Vehicle Law with very few changes. It is not additional legislation but the same legislation. Section two of the ordinance, which is involved in the instant case, is in the exact words of Section two of the statute and

Section sixty-two of the ordinance providing the penalty is the same as Section sixty-two of the statute, except the penalty has been changed to bring the matter within the jurisdiction of the police court.

Clearly the ordinance attempts to punish the identical offense punishable under Section sixty-two of the statute, for the offense in both statute and ordinance is defined in the same language. The question of whether the same act can be punished once under a general law forbidding it and also under a municipal ordinance is one upon which there is a great division of authorities and the reason for the conflict arises on the difference in granted powers. If the municipality has concurrent jurisdiction with the state to punish an offense, an ordinance punishing the offense is legal, although there may be a statute under which the offender may be also punished and a conviction under the one jurisdiction is not a bar to a conviction under the other.

Section 130 of the Constitution gives to the legislature absolute authority to provide by general law for the organization of municipal corporations without restrictions and the municipality is in this state a creature of the statute.

"In this state cities have only the following powers: (a) Those granted in express words. (b) Those necessarily implied or incident to the powers expressly granted. (c) Those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable." Stern v. Fargo, 18 N. D. 289, 122 N. W. 403, 26 L.R.A. (N.S.) 665.

"Cities and villages in North Dakota are municipal corporations and possess only such powers as are conferred on them by statute. Doubtful claims of power, or doubt or ambiguity in the terms used by the legislature, are resolved against the corporation." North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977; Weeks v. Hetland, 52 N. D. 351, 202 N. W. 807.

The city of Fargo is organized under the commission form of government and its powers are defined in § 3818, Compiled Laws, 1913, in seventy-five subdivision sections, which define specifically the powers of the commission relating to municipal affairs. Subdivision 73 provides that it has authority to pass all ordinances, rules and regulations proper or necessary to carry into *effect the powers granted to cities with such fines, penalties or forfeitures* as the city commissioners may deem

proper; provided that no fine or penalty shall exceed one hundred dollars and no imprisonment shall exceed three months for one offense.

It is clear from this statute that the offenses which the legislature intended that the city should have jurisdiction over were not of a serious nature or the city would not have been limited to a maximum fine of one hundred dollars and three months' imprisonment.

Cooley on Constitutional Limitations (7th ed.) on page 270 says: "The charter itself, or the general law under which they (cities) exist, is the measure of the authority to be exercised. And the general disposition of the courts in this country has been to confine municipalities within the limits that a strict construction of the grants of powers in their charters will assign to them; thus applying substantially the same rule that is applied to charters of private corporation. The reasonable presumption is that the State has granted in clear and unmistakable terms all it has designed to grant at all."

Judge Dillon states the rule as follows: "Where the act is, in its nature, one which constitutes two offenses, one against the State and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offense under the State law; but the legislative intention that this may be done ought to be manifest and unmistakable, or the power in the corporation should be held not to exist. Where the act or matter covered by the charter or ordinance, and by the State law, is not essentially criminal in its nature, and is one which is generally confided to the supervision and control of the local government of cities and towns, but is also of a nature to require general legislation, the intention that the municipal government should have power to make new, further, and more definite regulations, and enforce them by appropriate penalties, will be inferred from language which would not be sufficient were the matter one not specially relating to corporate duties, and fully provided for by the general laws." 2 Dill. Mun. Corp. 5th ed. § 632. 3 McQuillin, Mun. Corp. § 933, states that under ample charter power acts may be forbidden and punished by ordinance and by statute and then specifies the offenses. In other words if there is ample charter power the ordinance is valid.

If the instant case was one not essentially criminal in its nature and one generally under the control of local government of cities there

would be merit in respondent's contention, but driving an automobile while intoxicated is directly perilous to human life and is *malum in se*. 9 Huddy, Enc. of Automobile Law, § 14; King v. State, 157 Tenn. 635, 11 S. W. (2d) 904; Keller v. State, 155 Tenn. 633, 299 S. W. 803, 59 A.L.R. 685.

There is a very able discussion of the principle in the case of State v. Ferguson, 33 N. H. 424. Under the statute the city of Concord was given the power to prohibit the selling or giving away of any ardent spirits by any store-keeper, trader or grocer to be drunk, etc., except by inn-keepers, duly licensed and forbid the selling or giving away of any ardent spirits or other intoxicating liquors to any child, apprentice or servant without the consent of his parent, master or guardian or to any Indian. The city passed an ordinance providing that no person should sell intoxicating liquors within the city of Concord without a license. The court said: "The ordinance undertakes to prohibit the sale of intoxicating liquors, except such as are mentioned in the Pamph. Laws, chap. 846, act of July 6, 1849; . . . It in fact extends the prohibition as to those intoxicating liquors to every case of sale *to* any person, or *for* any purpose, and *by* any person not licensed by the mayor and aldermen. . . .

"But this statute, like all other legislative acts, is to be so construed that all its parts shall stand, if this may be done. For that purpose the meaning of each of its provisions is to be gathered by reading it in connection with all others, and thus construing it in the light of its context. . . .

"If this general provision confers the power to enact the ordinance, it is clear that the clauses which expressly give the power to regulate sales by store-keepers, etc., and *to* Indians and children, are unmeaning and useless; for if the general clause authorizes this ordinance, then it equally authorizes one in the precise terms of either or both of those special clauses to regulate such sales. . . . To hold, then, that the general clause confers the power, is in effect to expunge these special provisions from the charter; and not these only, but all the numerous clauses which go to limit and define the precise boundaries of the power to be exercised by the city in the various cases specified for the enacting of by-laws and ordinances. . . .

". . . The power to enact a by-law to prohibit the sale of spirituous

and other intoxicating liquors, *by* or *to* certain persons designated, or *for* certain purposes specified, is by implication, as a general principle, a denial of the power to prohibit sales by or to other persons, or for other purposes. Expressio unius est exclusio alterius. . . .

"The power to make by-laws, when not expressly given, is implied as incident to the very existence of a corporation, but in the case of an express grant of the power to enact by-laws limited to certain specified cases and for certain purposes, the corporate power of legislation is confined to the objects specified; all others being excluded by implication. . . . In Child v. Hudson's Bay Co. 2 P. Wms. 207, 24 Eng. Reprint, 702, it is laid down that a 'corporation has an implied power to make by-laws; but when the charter gives the corporation power to make by-laws, they can only make them in such cases as they are enabled to do by the charter, for such power given by the charter implies a negative that they shall not make by-laws in other cases.' "

In the case of Swann v. Baltimore, 132 Md. 256, 103 Atl. 441, at page 442, the court said: "The statute, it appears, covers the whole subject of the designation and regulation of hack or cab stands in the City, which was formerly dealt with by § 6 of the Ordinance of 1908, and the Act further repeals all laws and parts of laws inconsistent with the Act. State v. Gambrill, 115 Md. 506, 81 Atl. 10; Montel v. Consolidation Coal Co. 39 Md. 164.

"In 17 Am. & Eng. Enc. Law, 246, the general rule, upon this subject, is stated, as supported by authority, to be that 'where a municipal corporation has been empowered to make ordinances in regard to certain subjects and the legislature subsequently enacts a law regulating the same matter, which had been before permitted to be regulated by such ordinance, it shows most satisfactorily that the legislature intended to take the regulation of the matter out of the hands of the corporation to the extent to which such general law regulated it."

Where a statute confers certain specific powers on a municipality, those not enumerated are withheld. Van Eaton v. Sidney, 211 Iowa, 986, 231 N. W. 475, 71 A.L.R. 820.

Where the legislature specifically enumerates various powers which the common council of a municipality may render effectual by means of ordinances, this enumeration is an implied exclusion of the right to

act otherwise than as specifically directed. Cumnock v. Little Rock, 154 Ark. 471, 243 S. W. 57, 25 A.L.R. 608.

In the case of State v. Mandchr, 168 Minn. 139, 209 N. W. 750, at page 751 where the offense of driving an automobile while intoxicated was charged, the Minnesota court reached the same conclusion as the California court in the case of Helmer v. Superior Ct. 48 Cal. App. 140, 191 Pac. 1001, the Minnesota court said "The true purpose of all municipal ordinances is to regulate local affairs. The sobriety of drivers of motor vehicles is not a local affair. It is a matter of concern to all the people of the state. A driver under the influence of intoxicating liquor is a menace to everyone who happens to be on the road or street while he is at large. It is true that he is a greater menace when he selects a busy street as a driveway instead of a remote country road. . . . It is too clear for argument that to drive a motor vehicle is to use it, and the conclusion follows that Mandchr's conviction was unauthorized for the reason that the ordinance had been superseded by the statute. In reaching this conclusion, we have consulted with profit Helmer v. Superior Ct. 48 Cal. App. 140, 191 Pac. 1001, and Buffalo v. Lewis, 192 N. Y. 193, 84 N. E. 809."

In the case of Helmer v. Superior Ct. 48 Cal. App. 140, 191 Pac. 1001, the California court held, that because of the necessity of uniform regulation of motor vehicles, such regulation was not a municipal affair but a matter of state wide importance and the motor vehicle act making it a felony while driving a vehicle while intoxicated is an act for the protection of the lives of the citizens and not a mere regulation of motor traffic.

In the case of the city of Buffalo v. Lewis, 192 N. Y. 193, 84 N. E. 809, the court said the necessity for a uniform law throughout the state was apparent and the motor vehicle law was clearly designed as a new, complete and general enactment to take the place of all previous statutes relating to the use of streets and highways by motor vehicles.

In the case of Ayres v. Chicago, 239 Ill. 237, 87 N. E. 1073, at page 1075, the court said: "The legislature has by the Motor Vehicle act taken the subject of the regulation of the speed and operation of automobiles out of the hands of local authorities and passed the Motor Vehicle law as a general, uniform regulation, applicable alike to all municipalities of the State. The effect of this law manifestly is to

abrogate all municipal ordinances designed to regulate the use of motor vehicles passed prior to the time such law went into force and to deprive such municipalities of the power to pass such regulating of ordinances in the future. The necessity for such uniform law was a matter of legislative determination, with which the courts have nothing to do. Clearly, the purpose of the legislature was to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles."

In the case of State v. Charles, 16 Minn. 474, Gil. 426, the court held that it is not competent for the legislature to confer on justices of the peace jurisdiction over offenses punishable by the state law as a felony. The court said: "The legislature could not delegate the legislative authority on the subject, because it is *per se* a crime against the state, an offense against society at large; *malum in se,* like rape, burglary, arson, larceny, perjury, etc., and not merely an offense against the city of St. Paul, or *malum prohibitum,* like leaving a horse unhitched neglected to shovel snow off the sidewalks, erecting a frame building within densely populated districts, etc." This case was followed in the case of State v. Oleson, 26 Minn. 507, 5 N. W. 959. See also Robinson v. Franklin, 1 Humph. 156, 34 Am. Dec. 627.

We have been unable to find any decisions construing chapter 162, Session Laws, 1927, 9 Uniform Laws Anno. 337; but the decisions of the courts in states where they have uniform legislation upon the subject is certainly applicable to the Uniform Act Regulating Traffic on Highways. The experts who drew the uniform act had the benefit of all former uniform laws upon the subject and it was clearly their intention to cover the entire field and make the law uniform throughout the United States. That is the purpose of the act, as expressed in its title and it is also the purpose of the act as expressed in its title, to restrict the authority of the municipality to those powers which are specifically granted in the act.

It follows that the police court of the city of Fargo had no jurisdiction over the defendant for the reasons: (1) The powers granted to municipalities by the Uniform Motor Vehicle Act are exclusive and do not include the power to prohibit the driving of an automobile by a person while under the influence of intoxicating liquor. (2) The regulation in the Uniform Motor Vehicle Act relating to the offense of

driving an automobile while under the influence of intoxicating liquor is not a municipal affair but is a matter of state wide importance, intended for the protection of the lives of the citizens of the state and not a mere regulation of motor traffic.

The judgment is reversed.

NUESSLE and BURR, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). I am unable to agree with the rule announced or the conclusion reached by my associates in this case.

The city of Fargo has the commission system of government. The statute under which the government is being conducted grants to the board of city commissioners, among others, the power: to regulate and prevent the use of streets; to regulate traffic upon the streets; to regulate the speed of vehicles and cars within the limits of the corporation; to prevent intoxication and all disorderly conduct; and to adopt such other ordinances not repugnant to the Constitution and laws of the state as the general welfare of the city may demand, and, to "pass all ordinances . . . proper and necessary to carry into effect the powers granted to cities, with such fines, penalties or forfeitures as the City Commissioners may deem proper; provided that no fine or penalty shall exceed one hundred dollars and no imprisonment shall exceed three months for one offense." Comp. Laws 1913, § 3818. It also provides that when the manner of doing any act or thing which the Board of Commissioners are empowered to do and perform is not specifically pointed out by the statute, "the board of commissioners may provide by ordinance the details necessary for the full exercise of such power." Comp. Laws 1913, § 3819.

This statute was in full force and effect at the time the ordinance in question here was enacted, and is still in full force and effect. The board of city commissioners then had, and still have, the powers thus enumerated so far as concerned the enactment of the ordinance in question here, unless such powers had been taken away by chapter 162, Laws 1927, known as the Uniform Motor Vehicle Act. The title of that enactment, as well as certain provisions thereof, are quoted in the majority opinion. The act is divided into sub-divisions or sub-titles, each relating to a different subject. Thus § 4 of the Act relates to

speed limits. In § 4(c) it is provided that local authorities may increase the speed which shall be deemed prima facie lawful upon through highways within the city. Section 16 of the Act relates to "turns at intersections." Here again there is a provision authorizing local authorities to adopt regulations different from those contained in the statute. Section 21 of the Act relates to the stopping of cars at certain through highways and it authorizes local authorities to designate certain streets as main travelled or through highways.

Other provisions of the statute (§§ 38–42) give local authorities authority as regards the weight of loads and vehicles, and the use of highways when they are likely to be seriously damaged by reason of deterioration, rain, snow or climatic conditions. The local authorities are also authorized to erect and maintain appropriate signs designating resident and business districts and to give notice of local parking and other special regulations. (§ 58.) Aside from these, the only other provision in the Act relating to the power of local authorities is ·§ 33 thereof which reads as follows: "Local authorities except as expressly authorized by §§ 4(c) and 21 *shall have no power or authority to alter any speed limitations* declared in this act or *to enact or enforce any rule or regulation contrary to the provisions of this act,* except that local authorities shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one way traffic upon certain highways and may regulate the use of the highways by processions or assemblages. Local authorities may also regulate the speed of vehicles in public parks and shall erect in all entrances to such parks adequate signs giving notice of any such special speed regulations."

It will be noted that aside from the provisions which specifically authorize local authorities to adopt rules and regulations concerning some specific subject, there is no provision in the act whatsoever to the effect that local authorities may not legislate upon subjects covered by the act provided such legislation is not in conflict with, or contrary to, the provisions thereof. On the contrary, the very language of § 33, supra, impliedly recognizes the existence of such power on the part of local authorities. It says "local authorities . . . shall have no power or authority . . . to enact or enforce any rule or regulation *con-*

*lrary* to provisions of this act except. . . ." Certainly the board of city commissioners of Fargo did have authority under the powers (above enumerated) conferred upon them by § 3818 Comp. Laws 1913, to enact the ordinance in question here unless that power has been taken away by the provisions of chapter 62, Laws 1927. But that statute says that the only particulars in which it limits the powers of the board of city commissioners are: (1) that (except as expressly authorized therein) such board shall not "alter any speed limitations declared in" the statute; and (2) such board shall not "enact or enforce any rule or regulation contrary to the provisions" of said chapter 162, Laws 1927. "Contrary" means in opposition to, inconsistent with, or adverse to. Webster's New International Dictionary.

The legislature has at no time, in any manner, expressly modified or curtailed the powers granted to a board of city commissioners by § 3818, Comp. Laws 1913. Chapter 162, Laws 1927, does not purport to change or alter such powers. Of course, the latter statute, insofar as it is contrary to, or in conflict with, the powers granted to the Board of City Commissioners by § 3818 Comp. Laws 1913, will to that extent supersede the former enactment. But it by no means follows that because the legislature has enacted a law dealing with a subject that the legislative body of a city is inhibited from doing so either under general (notes in 4 Ann. Cas. 2; 13 Ann. Cas. 799; and Ann. Cas. 1912D, 677), or express (notes in 4 Ann. Cas. 3; 13 Ann. Cas. 799; and Ann. Cas. 1912D, 679) charter powers. 19 R. C. L. pp. 804, 805.

Cooley (Cooley, Const. Lim. 7th Ed. p. 279) says:

"The state law and the by-law may both stand together if not inconsistent. Indeed, an act may be a penal offense under the laws of the state, and further penalties under proper legislative authority be imposed for its commission by municipal by-laws; and the enforcement of the one would not preclude the enforcement of the other."

"Within the contemplation of the constitutional inhibition against dual jeopardy for the same offense, our municipal governments are regarded as separate and distinct bodies politic from the government of the state, so that the same act may be a violation of, and consequently a crime against, the laws of both governments; the criminal aspect of the act consisting of its violation of the law. The offense, so far as the

municipality is concerned, is complete, independent, and distinct when a municipal law is violated, and the punishment follows from a violation of its law without reference to the infraction of the law of any other government. The Constitution does not prohibit a second jeopardy for the same act, but forbids the second jeopardy for the same offense."

In considering the question whether a municipality may enact an ordinance under a general power, and make punishable an act which is denounced as a crime by the law of the state and made punishable as such, the Supreme Court of Iowa said:

"In some states the municipalities are expressly prohibited from punishing acts which are denounced by statute. See Indianapolis v. Huegle, 115 Ind. 581, 18 N. E. 172. In the absence of such limitations and where the powers are general, as in this state, the authorities are in sharp conflict as to whether the power to punish an act, through the enactment of an ordinance, for which a penalty is prescribed by the Legislature, is ever to be inferred. See Thrower v. Atlanta, 124 Ga. 1, 52 S. E. 76, 110 Am. St. Rep. 147, 4 Ann. Cas. 1, 1 L.R.A. (N.S.) 382, and note: also 1 Smith, Corp. 519, et seq.

"The arguments against such implications are that the criminal laws of the state should be uniform in the elements that make up the offense, the penalties denounced, and in the form and procedure to prosecute; that it is the province of the Legislature alone to declare what shall constitute a crime and prescribe the punishment therefor; that the offense against the criminal laws of the state is the same offense, in whatever locality committed, and should subject the offender to the same punishment; and that the attempt to exercise such powers by the municipality might impair the administration of criminal justice. But none of these considerations are fundamental and, as experience has demonstrated, none are of controlling importance. *The central thought throughout is that the statute and ordinance create the same offense. But this is not so.* (Italics mine. Municipal corporations 'are bodies politic and corporations vested with political and legislative powers for local civil government and police regulations of the inhabitants of particular districts included in the boundaries of the corporations.' They are in many respects local governments established to aid the government by the state. The necessity of their organiza-

tion may be found in the density of the population of localities and the conditions incidental thereto. Because of this, regulations peculiar to a particular community have proven essential to the accomplishment of its objects. Many acts are far more injurious, and the temptation to commit them much greater, in such localities than in the state at large, and, when done, are not only wrongs to the public at large, but additional wrongs to the corporations within which perpetrated. When made penal by both state and city or incorporated town, each becomes a separate offense against the state and against the municipality. The penalty imposed by the city or town is superadded to that fixed by statute on account of the additional wrong done, so that the wrongdoer is not punished twice for the same offense, but for two offenses arising from the same act." Neola v. Reichart, 131 Iowa, 492, 109 N. W. 5. See also Theisen v. McDavid, 34 Fla. 440, 16 So. 321, 26 L.R.A. 234.

In this state there is no provision of law, either constitutional or statutory, prohibiting a city from enacting an ordinance relating to a subject covered by a state statute. But inasmuch as (in this state) the legislative powers of a city are bottomed upon statutory enactment, it, of course, follows that an ordinance which conflicts with a valid statute must yield. In such case the statute conferring power upon the city is to that extent amended, or repealed, as the case may be, by the latter law. State v. Harris, 50 Minn. 128, 52 N. W. 387, 531.

In the absence of specific constitutional or statutory provisions limiting the effect or validity thereof, an ordinance, otherwise valid, is not stricken down by a statute making the act denounced by the ordinance an offense against the state, unless there is an irreconcilable conflict between the provisions of the ordinance and the provisions of the statute. Ibid. When there is no conflict, the perpetrator of the forbidden act becomes subject to punishment under both the ordinance and the statute. Ibid. Elk Point v. Vaughn, 1 Dak. 113, 46 N. W. 577; Yankton v. Douglass, 8 S. D. 440, 66 N. W. 923; State v. Hughes, 182 Minn. 144, 233 N. W. 874. In short, where a statute denominates a certain act an offense and prescribes a punishment therefor and a city enacts an ordinance making the same act punishable, and where the subject is one concerning which the city has power to enact the ordinance except for the fact that the state has legislated upon the subject, then viewed from a legal aspect we are confronted with a situa-

tion similar or analogous to one where a conflict exists between two statutes, and the doctrine of repeal or amendment by implication becomes applicable: the ordinance ceases to be valid only when there is an unavoidable conflict or contradiction between the terms of the statute and the terms of the ordinance, so that the two cannot stand. State v. Harris, 50 Minn. 128, 52 N. W. 387, supra; St. Louis v. Klausmeier, 213 Mo. 127, 112 S. W. 517, 518; 1 Lewis's Sutherland, Stat. Constr. 2d ed. §§ 239–276, 487.

"The intention to repeal, however, will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance." 1 Lewis's Sutherland, Stat. Constr. p. 464.

"Repeals by implication are not favored. This means that it is the duty of the court to so construe the acts, if possible, that both shall be operative. 'When some office or function can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject.' 'Considerations of convenience, justice and reasonableness, when they can be invoked against the implication of repeal, are always very potent.' 'There must be such a manifest and total repugnance that the two enactments cannot stand.' " 1 Lewis's Sutherland, Stat. Constr. 2d ed. pp. 465–467.

"In order that there shall be a conflict of any kind, two things must of necessity exist, and, when it is contended that there is a conflict between two laws, both must contain either express or implied provisions which are inconsistent and irreconcilable with each other." 1 Blashfield, Cyclopedia of Automobile Law, p. 229.

In Struthers v. Sokol and Youngstown v. Sandela, 108 Ohio St. 263, 140 N. E. 521, the Supreme Court of Ohio had under consideration judgments of conviction rendered under municipal ordinances prohibiting the manufacture and sale of intoxicating liquors as a beverage. The Constitution of Ohio (§ 9, art. 15) provided:—"The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The general assembly shall enact laws to make this provision effective." The Ohio Constitution also contained the following provision: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits

such local police, sanitary and other similar regulations as are not in conflict with the general law." Ohio Const. art. 18, § 3.

The legislative assembly, in conformity with the constitutional mandate, had enacted laws prohibiting the manufacture and sale of intoxicating liquors as a beverage. The sole question presented for determination was the validity of the ordinance under which the conviction was had. That question, as the Ohio Court said, in its opinion, had "two elements: (1) Whether municipalities in Ohio have any right to enact or enforce ordinances prohibiting the manufacture and sale of intoxicating liquor as a beverage; (2) whether, if municipalities possess such power, the ordinances in question are in conflict with general law and therefore void." 108 Ohio St. 265, 140 N. E. 520.

On the first of these questions it was contended that the Ohio constitution conferred the power of legislation only upon the general assembly. The court held that under its former decisions, and the constitutional provision (above quoted) which conferred certain legislative powers upon municipalities, the first question must be answered in the affirmative. Having disposed of the first question, the court said:

"It will be seen therefore that, unless there is some conflict between the ordinance and the state law which would invalidate the ordinance, this court has repeatedly answered the present inquiry. Let us therefore look to the second question presented, and inquire whether there is such conflict as would render these ordinances invalid." 108 Ohio St. 267, 140 N. E. 521.

After stating that the ordinance and the state enforcement acts were too lengthy to be set out in full in the opinion for the purpose of showing the differences between them, the court said:—

"It is sufficient to say that a careful examination of all of them discloses that certain acts are punishable by the Crabbe and Miller Acts (statutes) which are not covered by the ordinances, or either of them, and that, on the other hand, the ordinances penalize certain acts which are not declared to be illegal under the state laws. In general, the state laws provide much more severe penalties, although, in at least one particular, greater severity is prescribed by one of the ordinances. It must therefore be determined whether these differences constitute such

a conflict as to bring the ordinances within the inhibition of the latter part of § 3, article 18."

"It is manifest that this branch of the case must turn largely upon the range of meaning to be given the word 'conflict,' and whether the differences, where no antagonism appears, will render the ordinances invalid. The Century Dictionary has defined 'conflict' as follows: 'Discord of action, feeling or effect; antagonism, as of interests or principles; counteraction, as of causes, laws, or agencies of any kind; opposing action or tendency; opposition; collision.'

"Measured by the foregoing definition, it is difficult to observe a real conflict. *No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other. No act is either expressly or inferentially permitted or licensed by either of the ordinances, or the statutes. On the contrary, all acts referred to are forbidden and penalties imposed for violations.* (Italics mine). It is not contended that any of the provisions of the ordinances or statutes are violative of either the state or Federal Constitutions pertaining to prohibition, but, on the contrary, it is conceded that they are in harmony with the constitutional provisions, and designed to promote the enforcement of the constitutional amendments. In one of the ordinances a slightly heavier penalty is provided for a second offense, but it has been repeatedly held in many of the states, including the state of Ohio, that this is no valid objection. . . .

"It has repeatedly been held that the punishment of an act defined as a crime under a state law does not preclude further punishment as a misdemeanor under a municipal ordinance." 108 Ohio St. 267–269, 140 N. E. 521.

This language and reasoning seem quite applicable to the statute and ordinance under consideration here.

In the case of United States Fidelity & G. Co. v. Guenther, 281 U. S. 34, 74 L. ed. 683, 50 S. Ct. 165, 72 A.L.R. 1064, the Supreme Court of the United States had under consideration a question of alleged conflict between a statute and an ordinance. The statute prohibited the employment of a child under sixteen years of age to operate an automobile; the ordinance prohibited the operation of an automobile by a

person under eighteen years of age. It was claimed that there was a conflict and that, consequently, the ordinance was invalid. In disposing of that contention the Court said:

"The fact that a state statute prohibits the employment of a child under sixteen years of age to operate an automobile does not affect the validity of the city ordinance. Municipal corporations in Ohio are given 'special power to regulate the use of the streets, to be exercised in the manner provided by law,' and 'the care, supervision, and control of public highways, streets,' etc. Plainly the general statute, which merely forbids the employment of minors under sixteen years to operate automobiles, does not prevent the city, in the exercise of its delegated power to regulate the use of its streets, from prohibiting the operation of automobiles by minors under eighteen years of age. Such a regulation merely supplements locally the provision of the general statute and is not in conflict with it."

In the majority opinion considerable reliance is placed upon the decision of the Supreme Court of California in Helmer v. Superior Ct. 48 Cal. App. 140, 191 Pac. 1001, and the decision of the Supreme Court of Minnesota in State v. Mandehr, 168 Minn. 139, 209 N. W. 750. In fact these are the only authorities cited in the majority opinion involving a question of alleged conflict between an ordinance and a statute, where both prescribed punishment for the driving of an automobile by a person under the influence of intoxicating liquor. The decision of the California court is based upon the rule adopted in that state,—(which is contrary to the overwhelming weight of judicial authority in this country),—that a conviction under a city ordinance constitutes a bar to a prosecution under a statute, where both prosecutions are based on the same act, and that consequently a conflict exists where an ordinance prescribes a penalty for the same act that is punishable under a penal statute. 18 Cal. Jur. p. 941; McQuillin Mun. Ord. § 501.

The principle was first announced by the Supreme Court of California in Re Sic, 73 Cal. 142, 14 Pac. 405. In the opinion in that case the court said: "It would seem that an ordinance must be conflicting with the general law which may operate to prevent a prosecution of the offense under the general law. The constitution provides that no one shall be twice put in jeopardy for the same offense. If tried and

convicted or acquitted under the ordinance, he could not be again tried for the same offense under the general law."

It seems to be conceded even in California that the rule adopted in that state is contrary to the rule in force in other jurisdictions. In California Jurisprudence—(18 Cal. Jur. pp. 940, 941) it is said: "Authorities from other jurisdictions support the rule that a municipal corporation has power to make penal an act which has already been made so by a state law, so long as there is nothing in the ordinance in conflict with a general law of the state, and when this is done such act becomes a separate offense against the state and the municipality, and that 'in that case, the penalty imposed by the municipality is super-added to that fixed by the general law on account of the additional wrong done to it, and the wrongdoer is not twice punished for the same offense.' The Constitution of California, however, authorizes the enactment only of such 'local, police, sanitary and other regulations as are not in conflict with general laws,' and the decisions are clear to the point that a conflict exists where an ordinance provides a penalty for the same acts that are punishable under the general law, and that the penal clause of such an ordinance is void."

In State v. Preston, 4 Idaho, 215, 38 Pac. 694, the Supreme Court of Idaho was required to determine whether it would adopt or reject the rule announced by the California decisions. The Idaho court said:

"Those decisions seem to proceed upon the theory that to permit towns and villages to punish for offenses that are punishable under the penal statutes of the state would be contrary to that provision of the constitution which provides that no one shall be twice put in jeopardy for the same offense, and hold such ordinances void for that reason, or as in conflict with the statutes providing punishment for the same offense. In the case last above cited (Re Sic, 73 Cal. 142, 14 Pac. 405), the court says: 'The decisions on this question are so very conflicting that they present no obstacle to our considering it as a new one,' etc., and proceeds to consider it as a new one, and hold such ordinances void. After carefully considering the authorities on both sides of this question, I find that *the clear weight of authority and reason is against the rule adopted by the supreme court of California,* and conclude that said ordinance is valid, and could be sustained, and cite in support

thereof a few of the authorities which sustain our position. . . ."
4 Idaho, 219, 38 Pac. 695.

Of course, under the theory (adopted in California) that a conviction under an ordinance constitutes a bar to a prosecution for the same act under a penal statute, there would of necessity be a conflict between an ordinance and a statute, both of which make the same act punishable. In such case enforcement of one would preclude enforcement of the other.

There is another provision in the California Constitution which is the basis for some of the language and reasoning employed in Helmer v. Superior Ct. 48 Cal. App. 140, 191 Pac. 1001, supra. Under the California Constitution a so-called "freeholders' charter is paramount to general laws in municipal affairs." 18 Cal. Jur. p. 822. Apparently the city of Sacramento is operating under such charter. It is stated in the opinion in Helmer v. Superior Court, supra: "The respondent concedes that the Constitution has granted to chartered cities the power to enact ordinances relating to 'municipal affairs,' which ordinances prevail over acts of the legislature inconsistent therewith." 48 Cal. App. 140, 191 Pac. 1001. Hence, when the California Court was considering whether an ordinance did or did not relate to "municipal affairs" it was concerned with whether the ordinance related to a subject which was one solely for consideration by the municipal authorities, and upon which the legislature was without power to legislate. If driving a motor car while under the influence of intoxicating liquor was a "municipal affair" within the purview of the Constitutional grant of power to municipalities, then the legislature was without power to enact a statute relating to the matter so far as such city was concerned. What is said in the opinion in Helmer v. Superior Ct. supra, as regards the general concern of the people of the state in the matter of intoxicated drivers of motor vehicles, was directed primarily at the question whether that subject was one properly denominated "municipal affair" and consequently withdrawn from the legitimate field of state legislation. The very language employed by the California Court in Helmer v. Superior Ct. however, recognizes that a city and the people therein, as a matter of fact, have a direct concern with intoxicated drivers, even more so than the people of the state at large; but it is held the question is also one of such general concern as to be

a state affair and not purely a "municipal affair." Obviously, the question which concerned the California court is not involved here; we have no constitutional provisions similar to those which the California court had before it.

The Minnesota court in State v. Mandehr, 168 Minn. 139, 209 N. W. 750, supra, had before it a situation quite different from that presented in this case. The statute involved in that case expressly provided that no ordinance "in respect to or limiting the use or speed of motor vehicles" shall have any force or validity. Minnesota Laws, 1911, Chap. 365, § 18; State v. Mandehr, 168 Minn. 139, 209 N. W. 750; Laws 1925, chap. 416, § 26. According to the Supreme Court of Minnesota this sweeping statute was enacted, "due to the intolerable conditions existing because of the action of some of the smaller municipalities." State v. Hughes, 182 Minn. 144, 233 N. W. 874. It will be noted that the Minnesota statute did not merely provide that no ordinance should be enacted that was in conflict with or contrary to the provisions of the statute but it forbade the enactment of any ordinance *"in respect to . . . the use . . . of motor vehicles."* The court said that the controlling point was to determine the effect to be given to the word "use;" that "to drive a motor vehicle is to use it;" and that, consequently, the ordinance was in conflict with, and superseded by, the statute.

The Minnesota court, however, expressly recognized "the rule that a general law and a local ordinance may stand together, provided the ordinance is not inconsistent with the law." State v. Mandehr, 168 Minn. 139, 209 N. W. 750, supra, and cited with approval its former decision in State v. Lee, 29 Minn. 445, 13 N. W. 913.

The latter case involved an ordinance which made an act punishable, which was a felony and punishable as such, under the laws of the state. In the opinion in that case the court said:

"An offense against a municipal by-law, proceeding from the same act, which also constitutes a felony under the general law, is not for that reason to be considered the same offense, because the two are distinct in their legal character, both as to the nature and quality of the offenses and the jurisdictions offended against; and a former conviction, to be a bar, 'must be upon a prosecution for the same identical act and crime.' . . .

"One who is within the limits of the municipal jurisdiction must not only obey the laws of the state, but also adjust his conduct to the requirements of the local by-laws. And an act which outside a city would subject him to punishment by the state only, committed inside its limits, by reason of the place and the consequent aggravation attending it, will render him liable also to the additional penalty. The same act, prohibited by both the city and the state, may thus constitute two offenses which are intrinsically and legally distinguishable. In support of this proposition the authorities are abundant and nearly unanimous.

"The learned author of the work on statutory crimes states the result of the authorities and the better doctrine to be 'that just as the same act may be an offense against both the United States and a state, and punished by both, so also it may be against a municipal corporation and a state.' . . .

"Acts of violence constituting felonies under the general law, but classed as disorderly conduct under a city ordinance; it is well settled may be punished under the ordinance without affecting the subsequent public prosecution."

The distinguished jurist, Judge Mitchell, filed a concurring opinion wherein he said in part:

"I fully concur in the conclusions arrived at in this case by my brother Vanderburgh, and substantially with all the reasons and arguments advanced by him in their support. I do not think that a prosecution for a violation of an ordinance of a municipal corporation is a prosecution for a crime or offense within the meaning of the constitutional prohibition against putting a party twice in jeopardy of punishment for the same offense, although the act constituting the violation of the ordinance may be a crime under the statutes of the state. . . .

"There are other considerations, founded on public policy and public necessity, which, although not controlling, are entitled to weight. The principle involved is far-reaching. There are many things besides keeping houses of ill-fame, which municipal corporations are authorized to suppress by ordinance, which are crimes under the general laws of the state. Now, if, on the one hand, it be held that all such ordinances are void as repugnant to the general statutes, and that a municipal corporation cannot prohibit by ordinance any act which is a crime under

such statutes, the corporations would be shorn of many police powers which they have always been supposed to possess, and which are absolutely necessary to the preservation of good order within their limits. On the other hand, if it be held that a so-called prosecution under a city or village ordinance is a bar to a prosecution for the same act as a crime under the general criminal laws of the state, it would virtually amount to a repeal pro tanto of these general laws in every city, town and village in the state." 29 Minn. 460, 461, 13 N. W. 918, 919.

I have examined the other authorities cited in the majority opinion, and find nothing in them inconsistent with the views expressed herein. Thus, in State v. Ferguson, 33 N. H. 424, the ordinance was in excess of the legislative power granted to the city, and in conflict with the provisions of the statute which granted the power.

In my opinion, the ordinance in question here is a valid enactment. It relates to a subject within the charter powers of the city. It is in no sense "contrary" to the provisions of Chapter 162, Laws 1927.

No act is permitted by the ordinance which is forbidden by the statute; no act is forbidden by the ordinance which is authorized or made lawful by the statute. On the contrary, the same act is forbidden and penalized by both.

BIRDZELL, J., concurs in the dissent.